Timothy **DAMBRO, M.D., Edell Radiology Associates, P.A., and Diagnostic Imaging Associates, P.A.**, Defendants Below–Appellants,

v.

Catherine C. **MEYER** and William R. **Meyer**, her husband, Plaintiffs Below–Appellees.

No. 534,2008.

Supreme Court of Delaware.

Submitted: March 25, 2009.
Decided: May 19, 2009.

John A. Elzufon, Esquire (argued) and Gary W. Alderson, Esquire, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, for appellants, Timothy Dambro, M.D., Edell Radiology Associates, P.A., and Diagnostic Imaging Associates, P.A.

Bartholomew J. Dalton, Esquire (argued), Dalton & Associates, P.A., Wilmington, Delaware, for appellees, Catherine C. Meyer and William R. Meyer.

Victor F. Battaglia, Sr., Esquire, Biggs & Battaglia, Wilmington, Delaware, amicus curiae, for the Medical Association of Delaware, and Leonard A. Nelson, Esquire, Office of General Counsel, Chicago, Illinois, amicus curiae for the American Medical Association.

Christopher J. Curtin, Esquire, MacElree Harvey, Ltd., Centerville, Delaware, and William H. Erhart, Esquire, amicus curiae, for the Delaware Trial Lawyers Association.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The plaintiffs-appellees, Catherine C. Meyer and her husband William R. Meyer, filed a medical malpractice action in Delaware on October 27, 2007. An amended complaint adding Edell Radiology Associates was filed on December 10, 2007. All parties agree that the December amendment relates back to the October filing. The defendant-appellants filed an answer to the complaint alleging the affirmative defense of statute of limitations and filed a motion for summary judgment. The Superior Court denied the motion for summary judgment. The Superior Court granted the defendants' application for a certificate of interlocutory appeal without objection by the plaintiffs. This Court accepted the application.

We have concluded, based on the facts and the applicable law, that the Superior Court erred when it determined that a factual dispute existed on the issue of when the statute of limitations began to run. Because the injury occurred on March 8, 2005, the date of the allegedly negligent misreading of the mammogram results and failure to diagnose the cancer, and because the complaint was filed more than two years later on October 24, 2007, the undisputed facts demonstrate that the complaint was filed after the two-year statute of limitations for medical negligence claims had expired. Therefore, the interlocutory judgment of the Superior Court must be reversed.

### Facts

The defendants in this action are Timothy Dambro, M.D., a physician specializing in radiology, and two professional corporations that provide radiology services, Edell Radiology Associates and Diagnostic Imaging Associates. Between 1997 and 2006, the defendants performed and interpreted seven mammogram examinations for the plaintiff, Catherine Meyer. The first mammogram occurred on March 21, 1997, for the purpose of "surveillance and potential diagnosis of breast cancer."[1] Meyer followed the defendants' recommendation and returned for follow-up mammograms

---

1. Amended Complaint at 2, *Meyer v. Dambro,* C.A. No. 07C–10–224 (Del.Super.Ct. December 10, 2007).

on January 27, 2000, March 6, 2001, August 7, 2002, October 4, 2003, March 8, 2005, and May 4, 2006. Meyer missed the recommended annual mammogram in 2004.

The first five exams were interpreted as normal and negative for cancer. The March 8, 2005, exam was interpreted by Dr. Dambro as normal and negative for cancer as well. When Meyer returned for her next annual exam on May 4, 2006, the mammogram was interpreted as highly suggestive of malignancy. Meyer learned that she had a large lesion in her breast and needed to see her gynecologist. Following a biopsy on May 18, 2006, Meyer learned that the lesion was positive for breast cancer.

Meyer began specialized treatment at Fox Chase Cancer Center. Soon after, she learned that the tumor was large and she would need additional surgery to evaluate her lymph nodes, as well as chemotherapy and radiation. After preoperative chemotherapy, Meyer had surgery on October 3, 2006. Her surgeries, chemotherapy and radiation continued until July 2007.

### Complaint

On October 24, 2007, Meyer and her husband filed a medical negligence action against defendants Timothy Dambro, M.D., Diagnostic Imaging Associates and Women's Imaging Center of Delaware. The complaint was accompanied by an affidavit of merit, which is statutorily required to be filed with all medical negligence claims. On December 10, 2007, the plaintiffs amended their complaint to add defendant Edell Radiology Associates, Dr. Dambro's employer at the time the alleged malpractice occurred. Women's Imaging

Center of Delaware was subsequently dismissed from the case. The parties agree that the amended complaint relates back to the filing date of the original complaint.[2]

In the complaint, Meyer alleged that the breast cancer was present and diagnosable during her March 8, 2005, mammogram and that the defendants were negligent when they failed to diagnose the existence of cancer during that exam. Meyer further alleged that, had the defendants diagnosed the lesion and recommended a surgical biopsy at that time, the cancer would have been detected in its early stages and would not have metastasized and decreased her chances of surviving. She also alleged that the defendants committed continuing negligence when they performed her first six mammograms and then advised her to wait for her next annual mammogram on May 4, 2006. Meyer claimed that "[t]his course of conduct constituted continuing negligence since the patient's tumor was permitted to grow until it finally metastasized to her lymph system after March of 2005 but before May of 2006."[3]

### Summary Judgment Motion

On January 8, 2008, the defendants filed an answer to the amended complaint, denying any wrongdoing and raising the statute of limitations as an affirmative defense. The defendants filed a motion for summary judgment on March 7, 2008, asserting that the complaint was filed after the statute of limitations had expired and was therefore time-barred. In their brief in support of their motion for summary judgment, the defendants asserted that title 18, section 6856 of the Delaware Code governs the limitations period for medical negli-

---

**2.** *Meyer v. Dambro*, C.A. No. 07C–10–224, slip op. at 4 n. 13, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

**3.** Amended Complaint at 3, *Meyer v. Dambro*, C.A. No. 07C–10–224 (Del.Super.Ct. December 10, 2007).

gence actions. Section 6856 relevantly provides:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter[.] [4]

This Court has held that for purposes of section 6856, when the plaintiff brings an action for a single act of medical negligence, the "injury occurs" when "the wrongful act or omission occurred." [5] When the plaintiff brings an action for continuous negligent medical treatment, the "injury occurs" at the time of "the last act in the negligent medical continuum." [6] Therefore, the defendants asserted that Meyer's injury occurred when Dr. Dambro allegedly misread Meyer's mammogram on March 8, 2005. Because Meyer filed her complaint on October 24, 2007, more than two years after the "injury occurred," the defendants contended that her claim was time-barred.

Meyer responded that the opinions of this Court in *Dunn*[7] and *Meekins*[8] were wrongly decided, but she acknowledged that the Superior Court could not decide such an issue and preserved the question for this Court. Meyer also argued that the enactment of title 18, section 6853 changed the statutory framework within which *Dunn* and *Meekins* were decided. Section 6853 now requires all plaintiffs filing a medical negligence action to accompany their complaint by an affidavit of merit from a competent expert, stating that the expert has reasonable grounds to believe that each defendant committed healthcare negligence.[9] The affidavit of merit must set forth the expert's opinion that the defendants breached the applicable standard of care and that the breach was a proximate cause of the injury or injuries claimed.[10]

Because Meyer's expert witness concluded that Meyer's cancer did not metastasize until November 1, 2005, the expert stated that he would not have been able to swear in an affidavit of merit prior to that date that the defendants' breach was the proximate cause of Meyer's injury, because he would not have had reasonable grounds to believe that the delay in diagnosing the cancer caused a "medically provable injury" to Meyer. Therefore, Meyer argued that a judicial determination that her cause of action accrued at the time of the alleged failure to diagnose her cancer would contradict section 6853, under which she could not seek redress for that wrong until she could secure an affidavit of merit.

She also argued that the cause of action was unknown within the two-year limita-

---

**4.** Del.Code Ann. tit. 18, § 6856 (2009).

**5.** *Meekins v. Barnes,* 745 A.2d 893, 897–98 (Del.2000); *Dunn v. St. Francis Hospital,* 401 A.2d 77, 80 (Del.1979).

**6.** *Meekins v. Barnes,* 745 A.2d at 899; *Ewing v. Beck,* 520 A.2d 653, 663 (Del.1987).

**7.** *Dunn v. St. Francis Hospital,* 401 A.2d 77 (Del.1979).

**8.** *Meekins v. Barnes,* 745 A.2d 893 (Del.2000).

**9.** Del.Code Ann. tit. 18, § 6853(a)(1) (2009).

**10.** Del.Code Ann. tit. 18, § 6853(c).

tions period and that she had three years from the date upon which her injury occurred under title 18, section 6856(1). In addition, she claimed that the defendants engaged in a course of continually negligent treatment between March 8, 2005, and May 4, 2006, so that the statute of limitations should not begin to run until the last date of treatment on May 4, 2006. Finally, she claimed that section 6856 was unconstitutional as applied to her and all breast cancer sufferers.[11]

### Superior Court Decision

After oral argument before the Superior Court on June 27, 2008, the Superior Court issued its Order and Opinion on September 30, 2008, denying the defendants' motion for summary judgment. The Superior Court concluded the two-year limitations period under section 6856 applied to Meyer's case and that there were no grounds to extend that date beyond two years because: first, the unknown injury provision of section 6856 did not apply, as the injury became known to Meyer on May 4, 2006, prior to the expiration of two years from the date of the alleged misdiagnosis on March 8, 2005; and second, the continuous negligent treatment doctrine did not apply, as Meyer was aware of the injury on May 4, 2006, prior to the expiration of two years from the alleged misdiagnosis on March 8, 2005, which was the last act in the allegedly negligent continuum. Under *Dunn* and *Meekins,* the Superior Court noted that the two-year statute of limitations began to run on March 8, 2005, when Dr. Dambro allegedly misread Meyer's mammogram and failed to diagnose her cancer. The Superior Court determined, however, that the enactment of section 6853 in 2003 altered the application of *Dunn* and *Meekins* in cases in which the allegedly negligent act is the failure to diagnose cancer and in other similar cases "where the negligent act typically does not itself cause injury at, or even near, the time of the act." [12]

Because the issue—whether the General Assembly's enactment of section 6853 altered the application of this Court's decisions in *Dunn* and *Meekins* to section 6856—was one of first impression in Delaware, the Superior Court decided the issue with the expectation that the matter would be reviewed by this Court *de novo* as a question of law. The Superior Court also stated that it would certify the issue for interlocutory appeal if either party applied. The Superior Court concluded that under *Meekins,* a plaintiff could file a complaint alleging medical negligence before she knew the extent to which the negligence proximately caused her injury. After the enactment of section 6853, however, all complaints alleging medical negligence must be accompanied by an affidavit of merit and the affidavit of merit must contain the opinion of a competent expert that the defendants breached the applicable standard of care and that the breach proximately caused the plaintiff's injuries. Therefore, the Superior Court concluded, a plaintiff can no longer file a complaint for medical negligence when the cause of inju-

---

11. The Superior Court declined to address this argument because there were sufficient state law grounds on which to decide the defendants' motion for summary judgment. *Meyer v. Dambro,* C.A. No. 07C–10–224, slip op. at 8 n. 23, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008) (citing *Carper v. Stiftel,* 384 A.2d 2, 7 (Del.1977) ("Accordingly, pursuant to the settled policy of the Court

not to decide a Constitutional question unless its determination is essential to the disposition of the case, we do not reach the Federal Constitutional issue.")).

12. *Meyer v. Dambro,* C.A. No. 07C–10–224, slip op. at 14, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

ry is not yet established to a reasonable degree of medical probability. In cases such as a failure to diagnose cancer, where the act of medical negligence is not accompanied by a causally related injury, plaintiffs such as Meyer cannot allege that the breast cancer in its localized form was proximately caused by the negligence of any defendant.

The Superior Court concluded that Meyer's injury did not occur until November 1, 2005, the date on which the breast cancer metastasized from a local to a regional disease, according to Meyer's expert. Meyer's expert stated that, prior to November 1, 2005, he would not have been able to give the opinion that there were reasonable grounds to believe that the delay in diagnosis caused a "medically provable injury." Without causation, the Superior Court concluded that Meyer could not have established a prima facie claim of medical negligence as required by section 6853. The spread of Meyer's cancer, therefore, constituted the "injury" proximately caused by the alleged misdiagnosis.

Because the date of that injury was a question of fact for the jury, the Superior Court determined that a material factual dispute existed and denied the defendants' motion for summary judgment. The Superior Court concluded:

> In the case of failure to diagnose a condition where the failure does not immediately cause injury, the statute of limitations must begin to run as of the first date upon which the plaintiff could have submitted an affidavit of merit that satisfies all statutory requisites—an issue of fact, if disputed, to be resolved by the jury.[13]

\* \* \*

In this case, plaintiff's expert alleges that the deviation from the standard of care did not proximately cause injury to Meyer until November 1, 2005. If the jury agrees, the Court must conclude that the complaint was timely filed. If, however, the jury accepts the defense position that the cancer metastasized on an earlier date, or that a calculable increased risk of injury occurred on an earlier date, this determination will inform the Court's application of the statute of limitations.[14]

The defendants filed an application for certification of an interlocutory appeal to this Court. The Superior Court granted the defendants' application on October 2, 2008. This Court accepted certification of the interlocutory appeal on October 31, 2008. Because we conclude that the plaintiffs' claim was barred by the applicable statute of limitations for medical negligence claims, we reverse the decision of the Superior Court denying the defendants' motion for summary judgment.

### The Parties' Contentions

In this interlocutory appeal, the defendants argue that the Superior Court erred as a matter of law when it determined that the enactment of section 6853, which requires a complaint alleging medical negligence to be accompanied by an affidavit of merit, alters the date on which the "injury occurred" under section 6856, which provides that a medical negligence claim must be filed within two years from the date on which the "injury occurred." The defendants contend that the Superior Court erred when it concluded that, in cases where the alleged negligent act is failure to diagnose cancer, the injury may not

**13.** *Meyer v. Dambro,* C.A. No. 07C–10–224, slip op. at 21, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

**14.** *Id.* at 22–23.

necessarily occur on the date of the alleged negligent act or omission as provided in *Meekins*, but instead when the plaintiff experiences some physical manifestation of the injury.

The defendants assert that this Court's holding in *Meekins*, that under section 6856 the "injury occurred" on the date on which the wrongful act or omission occurred,[15] still controls and is not affected by section 6853. The defendants also assert that the Superior Court improperly extended the statute of limitations for medical negligence claims by interpreting section 6853 as having reintroduced an element of proximate causation to the calculation of when the statute of limitations begins to run. Finally, the defendants claim they are entitled to summary judgment as a matter of law because no material issues of fact exist, as the statute of limitations began to run on March 8, 2005, the date of the alleged negligent act, that is, the defendants' failure to diagnose Meyer's breast cancer during her annual mammogram.

█ The plaintiffs counter that the trial court did not err when it denied the defendant's motion for summary judgment because the two-year statutory limitations period should be calculated from the date the plaintiff suffered an "injury," which was when the cancer metastasized after November 1, 2005. The plaintiffs argue

that because section 6853 requires a plaintiff to file an affidavit of merit with her complaint alleging medical negligence and the affidavit of merit must include an expert's opinion that an injury exists at the time of filing, Meyer could not possibly have brought her claim prior to November 1, 2005. The plaintiffs further argue that to interpret the statute of limitations under section 6856 as precluding claims for medical negligence by plaintiffs with latent diseases would violate the federal and state constitutions.[16] In addition, the plaintiffs assert that this Court must reconsider its interpretation of the date on which the statute of limitations begins to run under section 6856 because section 6853 requires an expert to give an opinion on both liability and causation. Therefore, the plaintiffs claim, the defendants' motion for summary judgment was properly denied.

### *Standard of Review*

█ Questions of statutory interpretation are questions of law that this Court reviews *de novo*.[17] This Court must determine "whether the Superior Court erred as a matter of law in formulating or applying legal principles."[18] When deciding questions of statutory construction, this Court must "ascertain and give effect to the intent of the legislature."[19] Because a

15. *Meekins v. Barnes*, 745 A.2d 893, 897 (Del. 2000).

16. Because we also conclude that there are sufficient state law grounds on which to decide the defendants' interlocutory appeal, we, like the Superior Court, decline to address this argument. *See Meyer v. Dambro*, C.A. No. 07C–10–224, slip op. at 8 n. 23, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008) (citing *Carper v. Stiftel*, 384 A.2d 2, 7 (Del. 1977) ("Accordingly, pursuant to the settled policy of the Court not to decide a Constitutional question unless its determination is es-

sential to the disposition of the case, we do not reach the Federal Constitutional issue.")).

17. *Delaware Bay Surgical Serv. v. Swier*, 900 A.2d 646, 652 (Del.2006).

18. *Delaware Ins. Guar. Ass'n v. Christiana Care Health Serv.*, 892 A.2d 1073, 1076 (Del. 2006) (citing *Moses v. Bd. of Educ.*, 602 A.2d 61, 63 (Del.1991)).

19. *Delaware Bay Surgical Serv. v. Swier*, 900 A.2d at 652 (quoting *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del.1985)).

statute passed by the General Assembly must be considered as a whole and not in parts, each section should be read in light of all others in the enactment.[20] The "golden rule of statutory interpretation ... is that unreasonableness of the result produced by one among possible interpretations ... is reason for rejecting that interpretation in favor of another which would produce a reasonable result."[21] Finally, this Court must reject any reading of a statute that is inconsistent with the intent of the General Assembly.[22]

### Medical Negligence Act Statute Of Limitations

Delaware's medical negligence statute appears in title 18, chapter 68 of the Delaware Code.[23] The Delaware Medical Malpractice Act was enacted in 1976 to address concerns about the law that existed at the time and the rising costs of malpractice liability insurance.[24] The report to the Governor by the drafting committee stated: "The overall effect [of the Medical Malpractice Act] will be to eliminate the uncertainty created by the present open-ended period of limitations."[25] Title 18, section 6856 sets forth the applicable statute of limitations for actions alleging medical malpractice. It relevantly provides:

> No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:
>
> (1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter[.][26]

Accordingly, the General Assembly chose a definite statute of limitations, with a two-year period applicable to injuries discovered within two years of the wrongful act and a three-year period applicable to "inherently unknowable" injuries.[27] In 1998, the Medical Malpractice Act was amended and is now referred to as the Medical Negligence Act.[28] Although the Act has been amended various times since its enactment in 1976, the relevant portion of section 6856 has not changed.

### Statute Of Limitations When The Injury Occurred

■ Section 6856 of the Medical Negligence Act requires an action for medical negligence to be filed within two years "from the date upon which [the] injury

---

20. *Id.* (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d at 1245).

21. *Id.* (quoting *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d at 1247).

22. *Id.*

23. Del.Code Ann. tit. 18, §§ 6801–6865 (2009).

24. 60 Del. Laws, c. 373 (1976); *Meekins v. Barnes,* 745 A.2d at 895–96; *Dunn v. St. Francis Hospital,* 401 A.2d at 79.

25. Report of the Delaware Medical Malpractice Commission, at 3–4, Feb. 26, 1976; *Meekins v. Barnes,* 745 A.2d at 896.

26. Del.Code Ann. tit. 18, § 6856.

27. Del.Code Ann. tit. 18, § 6856(1); *Meekins v. Barnes,* 745 A.2d at 896–97; *Dunn v. St. Francis Hospital,* 401 A.2d at 81.

28. 71 Del. Laws c. 373 (1998).

occurred." [29] In *Dunn v. St. Francis Hospital* and again in *Meekins v. Barnes,* this Court held that for the purpose of a medical malpractice claim based on a single act of medical negligence, the "injury occurred" on "the date when the wrongful act or omission occurred." [30] In *Meekins,* the plaintiff brought a claim for medical negligence in which she alleged that the defendants were medically negligent when they examined her mammogram and failed to diagnose her cancer in December 1994. [31] The plaintiff claimed that she was not "injured," however, until the defendants failed to call her back for a follow-up mammogram six months later in June 1995. [32] This Court concluded that the plaintiff's "injury occurred" when the medically negligent act occurred in December 1994. [33] In December 1994, the defendant doctor examined the plaintiff's mammogram, reported, allegedly negligently and inaccurately, that there were no changes from her prior mammograms and no signs of cancer, and recommended that she return the following year for her next mammogram. [34] Therefore, the plaintiff's cause of action for medical negligence began when the "injury occurred" on the date of the alleged misdiagnosis in December 1994. [35]

This Court explained in *Meekins* that the fact that the plaintiff did not know that she had a potential claim until her next annual mammogram in December 1995 did not toll the beginning of the two-year limitations period. [36] We explained that "[t]here was no cause of action that actually arose in June 1995 because no affirmative happening or event of medical negligence occurred at that time." [37] In *Meekins,* we recognized that "[i]t may seem harsh that a statute of limitations begins to run on a misdiagnosis from the date of that misdiagnosis when the patient is unaware of the allegedly negligent error causing the injury," but we also noted that the General Assembly designed the Medical Malpractice statute to ameliorate the harshness of the statute of limitations by providing an additional year to bring a suit in cases where the patient did not have knowledge of the claim until after the two-year period expired. [38] In *Meekins,* the plaintiff became aware of the potential misdiagnosis one year later, during her next annual mammogram in December 1995. Therefore, she became aware of the potential claim for medical negligence within the two-year limitations period and had two years from the date on which the "injury occurred" in December 1994 to bring her claim.

According to this Court's holding in *Meekins,* Meyer's complaint is time-barred by the two-year statute of limitations for medical negligence claims. Meyer's "injury occurred" on the date of the allegedly negligent act, that is, the defendants' failure to diagnose her cancer on March 8, 2005. Meyer filed her complaint on October 24, 2007, after the expiration of the limitations period. Meyer's argument that she did not suffer an "injury" until her cancer metastasized on November 1, 2005,

29. Del.Code Ann. tit. 18, § 6856.

30. *Meekins v. Barnes,* 745 A.2d at 897 (quoting *Dunn v. St. Francis Hospital,* 401 A.2d at 80).

31. *Id.*

32. *Id.*

33. *Id.* at 898.

34. *Id.* at 897.

35. *Id.*

36. *Id.* at 897–98.

37. *Id.* at 898.

38. *Id.*

fails under *Meekins*. Just as this Court rejected the argument that the plaintiff in *Meekins* was injured when the defendants failed to call her back for a six-month follow-up mammogram in June 1995 after the alleged misdiagnosis in December 1994, we must also reject Meyer's argument that she was injured when the cancer metastasized in November 2005 after the alleged misdiagnosis in March 2005. Meyer alleged in her complaint that the defendants committed medical negligence on March 8, 2005, when they failed to diagnose cancer in her breast from her mammogram. Meyer filed her complaint on October 24, 2007, more than two years after the allegedly negligent act occurred. Therefore, her claim was barred by the two-year statute of limitations for medical malpractice claims.

Meyer's argument was based on the affidavit of her expert witness, who stated that in his opinion there was no "injury" until the cancer metastasized on November 1, 2005. This Court has already held in *Dunn* and *Meekins* that the phrase "injury occurred" in section 6856, governing the statute of limitations for medical negligence claims, "refers to the date when the wrongful act or omission occurred." [39] The Superior Court, in accepting Meyer's argument, appears to have confused "manifestation of injury" with this Court's definition of "injury." Meyer's expert stated in his affidavit that Meyer's "injury" occurred when her cancer spread from a local to regional disease on November 1, 2005, and that he had no reasonable grounds to believe that allegedly negligent misdiagnosis on March 8, 2005, caused a "medically provable injury" until the cancer spread in November 2005.

The defendants correctly assert, however, that the allegedly negligent medical error was the failure to discover cancer during the March 8, 2005, exam, which caused a delay in treatment. The injury was the delay in treatment. That injury occurred on the date that the cancer could have been diagnosed but was not. Meyer claimed that the defendants could have diagnosed her cancer on March 8, 2005, but failed to do so. March 8, 2005, is the date on which Meyer's "injury occurred." The metastasis of the cancer on November 1, 2005, was a manifestation of the damage caused by the injury, i.e., the delay in treatment caused by the failure to diagnose the cancer earlier on March 8, 2005.

### Medical Negligence Act Affidavit Of Merit Requirement

■ The General Assembly's enactment of section 6853 in 2003 did not alter the date on which the "injury occurred" for purposes of the beginning of the limitations period under section 6856. Therefore, the Superior Court erred as a matter of law when it held that, in cases where the allegedly negligent act is a failure to diagnose a condition, and that failure does not immediately cause an injury, the statute of limitations does not begin to run until the date on which the plaintiff first could have submitted an affidavit of merit that satisfies the requirements of section 6853.

In the 2003 amendments to the Delaware Medical Negligence Act, the General Assembly established the requirement, under section 6853, that all complaints alleging medical negligence be accompanied by an affidavit of merit, signed by a qualified expert witness and stating that there are reasonable grounds to believe that each

**39.** *Meekins v. Barnes,* 745 A.2d at 897 (quoting *Dunn v. St. Francis Hospital,* 401 A.2d at 80).

defendant has committed medical negligence.[40] Section 6853 requires that the affidavit of merit "set forth the expert's opinion that there are reasonable grounds to believe that the applicable standard of care was breached by the named defendant(s) and that the breach was a proximate cause of injury(ies) claimed in the complaint."[41] Section 6856 was also amended in 2003 to establish a 90–day tolling period for prospective plaintiffs to investigate their potential claims.[42]

 The synopsis of the bill to amend the statutes provides:

> This Act requires an Affidavit of Merit signed by an expert witness to be obtained before a healthcare negligence lawsuit can be filed. Certain time periods for action are determined and a process for an extension is spelled-out. Expert Witness qualification requirements are set. Additionally a process to allow up to ninety (90) days to investigate a potential negligence claim is added and would extend the medical malpractice statute of limitations accordingly. It is expected that this grace period will give plaintiffs an opportunity to determine whether a potential claim has merit and will result in some lawsuits that might otherwise be filed not being filed. Finally, this Act requires healthcare providers to provide patients copies of their medical records within forty-five (45) days from the date the request is received.[43]

Nothing in the synopsis of the legislation or the actual bill amending the Act suggests that the General Assembly intended to affect this Court's holdings in *Dunn* and *Meekins* about when the "injury occurred" for purposes of the statute of limitations under section 6856. Repeal or modification of a statute by implication is disfavored unless the provisions of the later statute "relating to the same subject are so inconsistent with, and repugnant to, the prior Act that they cannot be reconciled on any reasonable hypothesis."[44] It is not enough that the later statute is different; "it must be contrary to the prior Act."[45]

The Superior Court concluded that, prior to the enactment of section 6853, a plaintiff could file a medical negligence complaint before the extent to which the negligence proximately caused her injury was known. In *Meekins*, this Court stated: "In theory, Meekins could have brought an action at [the time of] the allegedly negligent diagnosis, although her damages would be difficult to quantify."[46] In Meyer's case, the Superior Court concluded that, following the enactment of section 6853, this Court's observation was no longer accurate because "[a] plaintiff's cause of action for medical negligence does not accrue until such time as she is able to secure an affidavit of merit from a competent expert who is prepared to opine that the health care defendant(s) breached the applicable standard(s) of care *and* that such breach(es) proximately caused the plaintiff's injuries."[47] Therefore, the Su-

40. Del.Code Ann. tit. 18, § 6853 (enacted 2003) (2009).

41. Del.Code Ann. tit. 18, § 6853(c).

42. Del.Code Ann. tit. 18, § 6856(3).

43. H.B. 310, 142nd Gen. Assem., Reg. Sess. (Del.2003) (Bill Synopsis).

44. *Mayor & Council of Wilmington v. State ex rel. Du Pont*, 57 A.2d 70, 79 (Del.1947).

45. *Id.*

46. *Meekins v. Barnes*, 745 A.2d at 897.

47. *Meyer v. Dambro*, C.A. No. 07C–10–224, slip op. at 18, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

perior Court explained, "[n]o longer can a plaintiff file a ·complaint for medical negligence when the causation of injury is not yet established to a reasonable degree of medical probability." [48]

 The Superior Court's interpretation of section 6853 and its implications on the statute of limitations is not supported by either the plain language of the statute or the prior decisions of this Court. In *Dunn v. St. Francis Hospital*, this Court held that the "general theory of negligence" under the common law, which requires a showing of "negligence, proximate cause, and damage" to establish a cause of action, does not apply to medical negligence claims.[49] In *Dunn*, this Court determined that the "clear thrust of the statute," passed in "response to a particular issue in a particular context," was to render proximate cause analysis unnecessary in medical negligence claims.[50] Injury, therefore, is not related to the manifestation of damages resulting from the injury. It occurs at the time of the allegedly negligent act or omission.[51]

 In *Beckett v. Beebe Medical Center*, this Court explained that the affidavit of merit requires " 'that expert medical testimony be presented to allege a deviation from the applicable standard of care' " for the purpose of "reduce[ing] the filing of meritless medical negligence claims." [52] The General Assembly intended that a qualified medical professional would review a plaintiff's claim and "determine that there are reasonable grounds to believe that the health care provider has breached

the applicable standard of care that caused the injuries claimed in the complaint." [53] Accordingly, the affidavit of merit simply required Meyer to make a *prima facie* showing that there are reasonable grounds to believe that negligence has occurred and caused an injury, as defined by this Court in *Meekins*.

In Meyer's case, therefore, the expert had to give his opinion that there were reasonable grounds to believe that Meyer's cancer existed on March 8, 2005, and that the defendants misread Meyer's mammogram results on that date. The injury was the existence of the cancer, which the defendants failed to detect during the March 8, 2005, exam. The injury was not the cancer's later metastasis. If the cancer did not exist on March 8, 2005, then the defendants were not negligent in failing to detect it. The defendants' failure to detect the presence of cancer on March 8, 2005, caused Meyer's cancer to go undetected and untreated until her next mammogram. The failure to detect cancer was the negligent act and the resulting injury was that the cancer went untreated. Therefore, the negligent act and the injury occurred at the same time, when the defendants failed to diagnose Meyer's cancer on March 8, 2005.

 There is no indication in the plain language of sections 6853 and 6856 or in the synopses of the legislation amending the statutes in 2003 to conclude that the 2003 amendments were intended to add a proximate cause component to the allegation of injury necessary to assert a claim

---

**48.** *Id.*

**49.** *Dunn v. St. Francis Hospital*, 401 A.2d at 80.

**50.** *Id.*

**51.** *Meekins v. Barnes*, 745 A.2d at 897; *Dunn v. St. Francis Hospital*, 401 A.2d at 80.

**52.** *Beckett v. Beebe Medical Center*, 897 A.2d 753, 757 (Del.2006) (quoting *Adams v. Luciani*, 2003 WL 22873038, at *2 (Del.Supr.)).

**53.** *Id.*

for medical negligence. As we stated in *Dunn*, "[t]he statutory context and history makes it unnecessary for us to explore when damage occurred in the context the plaintiff argues." [54] Further, the 2003 amendments did not alter this Court's holding in *Meekins* that the statute of limitations begins to run on the date of the injury, which is the date the alleged negligent act or omission occurred.

In this case, the Superior Court's interpretation that the 2003 amendments to the Medical Negligence Act rendered this Court's holding in *Meekins* to be "no longer accurate" constituted legal error. We conclude that the enactment of section 6853 did not alter this Court's interpretation of when the statute of limitations begins to run under section 6856. Therefore, the Superior Court erred as a matter of law when it interpreted section 6853 as extending the statute of limitations in cases where the alleged negligent act is failure to diagnose cancer or some other disease.

### Statute Of Limitations Begins Date Of Alleged Negligent Act

 As in *Dunn*, this case presents "the question of whether the statute of limitations commenced to run when the negligent act or omission was committed or when the harm first manifested itself to the patient." [55] Like the plaintiff in *Dunn*, Meyer argues that there was no damage, and therefore no "injury," until her cancer later manifested itself, by metastasizing in Meyer's case. Like the plaintiff in *Dunn*,

Meyer seeks an alternative interpretation of the phrase in the statute, "date upon which such injury occurred," so that the commencement of the statute of limitations will be calculated from a different date.[56] Like the plaintiff in *Dunn*, Meyer now asserts that her cause of action for medical negligence began to accrue when all of the elements of classical negligence could be met—negligence, proximate cause and damage.[57] As we did in *Dunn*, this Court rejects the argument that the common law theory of torts applies to medical negligence claims. As we explained in *Dunn*, the statute of limitations for medical negligence claims is a product of statute, not common law, and can only be amended by statute and not as a matter of common law.[58]

In examining the legislative history of the then-Medical Malpractice Act, this Court explained that "the statute was a response to a particular issue in a particular context and . . . to construe it broadly without the bounds of that context, as plaintiff desires, would emasculate its very purpose." [59] The "particular issue" was the establishment of a clear and unambiguous statute of limitations in medical negligence cases.[60] The drafting committee of the Medical Malpractice Act explained that "the overall effect [of section 6856] will be to eliminate the uncertainty created by the present open-ended period of limitations." [61]

In *Dunn*, the plaintiff tried create an element of proximate cause to link the

54. *Dunn v. St. Francis Hospital*, 401 A.2d at 80.

55. *Dunn v. St. Francis Hospital*, 401 A.2d at 78.

56. *Id.* at 80.

57. *Id.*

58. *Id.*

59. *Id.*

60. *Id.*

61. *Id.* at 79 (quoting Report of the Delaware Medical Malpractice Commission, at 3–4, Feb. 26, 1976).

later onset of pain with an act of negligence five years earlier. This Court rejected that argument, holding that, had "the General Assembly intended there to be a line of demarcation based on the no pain/no injury rationale, it would have said so in some precise manner." [62] This Court explained in *Dunn* that "[w]e cannot frustrate the clear legislative intent.... The statutory context and history makes it unnecessary for us to explore when damage occurred in the context plaintiff argues." [63]

Since this Court decided *Dunn* in 1979, the General Assembly has not established a similar demarcation to address cases in which the alleged act of medical negligence is the failure to diagnose cancer or some other disease. Therefore, this Court cannot infer that such a demarcation was intended with the enactment of section 6853. Under *Dunn*, Meyer's injury occurred on March 8, 2005, the date on which her cancer was present and diagnosable and the date on which the defendants failed to diagnose the cancer. The fact that Meyer's cancer later metastasized relates to the amount of damages but does not determine the date of Meyer's injury, which occurred when the defendants failed to diagnose Meyer's cancer.

In *Meekins*, this Court held that the plaintiff's cause of action accrued when the defendants allegedly misread her mammogram results as negative for cancer and did not accrue six months after the mammogram was misread, as the plaintiff's expert had opined. [64] There, this Court explained that "[i]n theory, Meekins could have brought an action at [the time of the alleged misreading of the mammogram results] had Meekins known of the allegedly negligent diagnosis, although her damages would [have been] difficult to quantify [at that time]." [65] This Court also explained that "[t]he fact that Meekins did not know of the potential claim for misdiagnosis until her next annual examination ... did not toll the beginning of the two-year statute of limitations." [66] This Court also explained in *Meekins* that it would be "artificial to predicate the commencement of the statute of limitations period" based on a "theoretical six-month period" as suggested by the plaintiff's expert.[67] In the six months following the date on which the defendants failed to diagnose the *Meekins* plaintiff's cancer from her mammogram results, "[t]here was no cause of action that actually arose ... because no affirmative happening or event of medical negligence occurred at that time." [68]

■ As this Court acknowledged in *Meekins*, a statute of limitations that begins to run from the date of the alleged failure to diagnose can sometimes have harsh results, such as in cases where the patient was unaware of the allegedly negligent error that caused the injury.[69] In Meyer's case, however, Meyer became aware that she had cancer, and that she possibly had been misdiagnosed, in May 2006, ten months prior to the expiration of the statute of limitations. Therefore, she cannot argue that her injury was unknowable prior to the expiration of the statute of limitations.

■ Even if the injury Meyer sustained on March 8, 2005, did not manifest

---

62. *Id.* at 80.

63. *Id.*

64. *Meekins v. Barnes*, 745 A.2d at 897–98.

65. *Id.* at 897.

66. *Id.* at 897–98.

67. *Id.* at 898.

68. *Id.*

69. *Meekins v. Barnes*, 745 A.2d at 898.

itself until the cancer metastasized sometime after November 1, 2005, Meyer still had a cognizable claim for medical negligence on March 8, 2005, when she was injured by the defendants' failure to diagnose her allegedly then-existent cancer. Under Delaware's doctrine of lost chance or increased risk, as a direct and proximate result of the defendants' negligence on March 8, 2005, when they failed to diagnose Meyer's cancer, Meyer was unable to obtain prompt treatment when her cancer was in its early stages. In fact, that is one of the allegations in Meyer's complaint. The failure to diagnose placed Meyer at a "very high risk" that her cancer would advance and created a compensable injury, but did not toll the running of the statute of limitations.[70]

Under section 6856 and this Court's opinions interpreting that statute, the injury occurred on the date of the allegedly negligent act or omission. In this case, that was March 8, 2005, when the defendants failed to diagnose Meyer's cancer. The 2003 amendments to the Medical Negligence Act, including the requirement in section 6853 that all complaints alleging medical negligence be accompanied by an affidavit of merit, did not change or modify the date on which the injury occurred.

As this Court has explained: "The goal of statutory construction is to determine and give effect to legislative intent."[71] The synopsis of the 2003 legislation and the text of the statute itself do not mention any impact that section 6853 has on section 6856 or on the determination of when the statute of limitations begins to run. In *Ewing v. Beck*, this Court noted that there were various exceptions to the statute of limitations for medical negligence cases prior to 1976, when section 6856 was enacted.[72] In *Layton v. Allen*, for example, this Court considered when the two-year statute of limitations began to run when the injury was "inherently unknowable" and the plaintiff was "blamelessly ignorant"[73] and concluded that the then-applicable statute of limitations was ambiguous and that the General Assembly had not intended for the statute of limitations to bar actions before the harm had manifested itself.[74] This Court also concluded in *Layton* that the injury was sustained, and the statute of limitations period commenced, when the harmful effect manifested itself.[75] In *Ewing*, however, this Court recognized that the "inherently unknowable" injury rule was applied frequently in medical negligence cases so that the "seemingly finite two year statute of limitations did not begin to run in certain cases until many years after the date of the injury."[76]

When the General Assembly enacted the Medical Malpractice Act in 1976, it addressed "this and other perceived problems" with medical negligence actions.[77] Specifically, the act provided, among other things, for a "new" statute of limitations for medical negligence claims to address the "problem" that arose from the *Layton* decision.[78] This Court then interpreted

**70.** *See United States v. Anderson*, 669 A.2d 73, 76–77 (Del.1995).

**71.** *Ramirez v. Murdick*, 948 A.2d 395, 398 (Del.2008) (quoting *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007)).

**72.** *Ewing v. Beck*, 520 A.2d 653, 658–59 (Del. 1987).

**73.** *Ewing v. Beck*, 520 A.2d at 658 (citing *Layton v. Allen*, 246 A.2d 794 (Del.1968)).

**74.** *Layton v. Allen*, 246 A.2d at 797.

**75.** *Id.*

**76.** *Ewing v. Beck*, 520 A.2d at 658.

**77.** *Id.*

**78.** *Id.*

section 6856 as creating a two-year statute of limitations that begins to run from the date on which the injury occurred, that is, the date on which the allegedly negligent act or omission occurred, and not when the injury manifested itself.[79] Absent subsequent legislative enactments changing or modifying this Court's precedent, *Meekins* remains the law in Delaware. The Superior Court erred when it concluded that the affidavit of merit requirement changed the statute of limitations in cases where the injury manifested itself later, such as in cases of failure to diagnose cancer.

### Meyer Complaint Untimely Summary Judgment Was Appropriate

 Having determined that the statute of limitations for medical negligence actions begins to run from the date on which the allegedly negligent act or omission occurred and that the affidavit of merit requirement does not alter the beginning of the statute of limitations, we must next consider whether the defendants were entitled to summary judgment as a matter of law based on the undisputed material facts. This Court's scope of review of the Superior Court's decision to grant or deny summary judgment is *de novo*.[80] Summary judgment is only appropriate where, viewing the facts in the light most favorable to the non-moving party, the moving party has demonstrated that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[81] This Court will review the questions of statutory interpretation, which are questions of law, *do novo*[82] to determine whether the Superior Court erred as a matter of law in formulating or applying legal precepts to the material facts presented.[83]

We conclude that the Superior Court erred when it determined that the date of Meyer's injury was a question of fact for the jury. It is undisputed that the date of the allegedly negligent act was March 8, 2005, when the defendants failed to diagnose Meyer's cancer following her mammogram. It is also undisputed that Meyer filed her complaint on November 24, 2007. Section 6856 provides that no medical negligence action "shall be brought after the expiration of two years from the date upon which such injury occurred."[84] This Court has held that "there is no doubt that the phrase 'injury occurred' refers to the date when the wrongful act or omission occurred."[85] Therefore, Meyer's injury occurred on March 8, 2005, the date of the allegedly negligent act, and there is no material factual dispute as to this issue.

 The Superior Court acknowledged that "Meyer did not file her claim within two years of [the date of the allegedly negligent act]."[86] The Superior Court

79. *Meekins v. Barnes*, 745 A.2d at 897–98; *Dunn v. St. Francis Hospital*, 401 A.2d at 80.

80. *Lank v. Moyed*, 909 A.2d 106, 108 (Del. 2006).

81. *Id.* (citing *Emmons v. Hartford Underwriters Ins.* 697 A.2d 742, 744–45 (Del.1997)); *Burkhart v. Davies*, 602 A.2d 56, 59 (Del.1991) (citing *Benge v. Davis*, 553 A.2d 1180, 1182 (Del.1989)), *cert. denied*, 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992).

82. *Delaware Bay Surgical Serv. v. Swier*, 900 A.2d 646, 652 (Del.2006).

83. *Delaware Ins. Guar. Ass'n v. Christiana Care Health Serv.*, 892 A.2d 1073, 1076 (Del. 2006); *see Leatherbury v. Greenspun*, 939 A.2d 1284, 1288 (Del.2007).

84. Del.Code Ann. tit. 18, § 6856.

85. *Meekins v. Barnes*, 745 A.2d at 897; *Dunn v. St. Francis Hospital*, 401 A.2d at 80.

86. *Meyer v. Dambro*, C.A. No. 07C–10–224, slip op. at 9, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

also noted that "there are no grounds to extend that date beyond two years."[87] The Superior Court further recognized that "[t]he undisputed facts reveal that the injury of which Meyer complains (the spread of her breast cancer) became known to her prior to the expiration of two years from the date of the alleged [medical negligence]."[88] Because the defendants demonstrated that no material facts were in dispute, the burden shifted to the plaintiff, as the non-moving party, to show the existence of material facts in dispute.[89]

■ The plaintiff made three arguments: (1) her injury did not occur until her cancer metastasized on November 1, 2005; (2) her injury was unknowable until May 4, 2006, when she returned for her next annual mammogram; and (3) her injury occurred as part of a negligent course of treatment that continued until May 4, 2006. The Superior Court correctly rejected the second argument because "[t]he undisputed facts reveal that Meyer became aware that she had metastasizing breast cancer in May 2006, well within the two years following the date of the alleged misdiagnosis in March 2005."[90] The Superior Court also correctly rejected the third argument because "the undisputed facts reveal that the last alleged 'negligent act' occurred on March 8, 2005."[91]

As to the plaintiff's first argument, however, the Superior Court erred as a matter of law when it concluded that the enactment of the affidavit of merit requirement in 2003 changed the date on which the injury occurred for purposes of the statute of limitations in cases where the allegedly negligent act is failure to diagnose cancer or some other disease. Nothing in the language of section 6853 alters the application of section 6856 in medical negligence cases, even in those cases in which the allegedly negligent act is a failure to diagnose cancer. Absent legislative action, this Court's interpretation of section 6856 in *Dunn* and *Meekins* remains the law and, therefore, Meyer's injury occurred on March 8, 2005, the date the allegedly negligent act occurred.[92]

■ This Court cannot "rewrite clear statutes of limitations to provide exceptions."[93] The General Assembly made exceptions to the statute of limitations for some cases, such as with unknowable injuries and with children up to age six.[94] The 2003 amendments did not change this Court's holdings in *Dunn* or *Meekins*. There is no statutory basis to extend the exceptions to the statute of limitations beyond those expressly provided in the statute by the General Assembly. Based on the undisputed facts, summary judgment was appropriate as a matter of law because the complaint failed to comply with the requirements of section 6856, as it was filed after the two-year statute of limitations for medical negligence claims had expired.

### Conclusion

■ As we stated in *Reyes v. Kent General Hospital,* "[w]e have no alterna-

---

**87.** *Id.*

**88.** *Id.*

**89.** *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del.1995).

**90.** *Meyer v. Dambro,* C.A. No. 07C–10–224, slip op. at 11, 2008 WL 4455634 (Del.Super.Ct. September 30, 2008).

**91.** *Id.* at 13.

**92.** *Meekins v. Barnes,* 745 A.2d at 897; *Dunn v. St. Francis Hospital,* 401 A.2d at 80.

**93.** *Ewing v. Beck,* 520 A.2d at 660.

**94.** Del.Code Ann. tit. 18, § 6856.

tive but to enforce Section 6856 in accordance with its plain terms despite the somewhat unfortunate result produced" because " '[j]udges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will.' " [95] The interlocutory judgment of the Superior Court is reversed. This matter is remanded for further proceedings in accordance with this opinion.

**95.** *Reyes v. Kent General Hospital*, 487 A.2d 1142, 1146 (Del.1984) (quoting *Delaware Sol-* *id Waste Auth. v. News–Journal Co.*, 480 A.2d 628, 634 (Del.1984)).