# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CANDY VAUGHN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N13C-07-132 ALR |
| | ) | |
| JEFFREY I. JACKERSON, D.O., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Date Submitted: July 12, 2016
Date Decided: July 12, 2016

### *Upon Reargument of Defendants' Motions for Summary Judgment*
**GRANTED**

This matter is before the Court on a motion for reargument with respect to the motions for summary judgment regarding the statute of limitations filed by Defendants Jeffrey Jackerson, D.O., Kent Diagnostic Radiology Associates, P.A., and Milford Memorial Hospital. Upon consideration of the facts, arguments and legal authorities set forth by all parties; decisional precedent; and the record of this case, the Court finds as follows:

1. This Court has issued several decisions addressing statute of limitations in this matter. In the meantime, numerous procedural developments

changed the posture of this case for trial.[1]  The only claims to be tried are the allegations by Plaintiffs of medical negligence by the radiologist and those entities that are vicariously liable for the radiologist's alleged negligence, specifically, Jeffrey Jackerson, D.O., Kent Diagnostic Radiology Associates, P.A., and Milford Memorial Hospital (referenced collectively as "Defendants").

2.　　The medical negligence statute provides that a cause of action cannot be brought after two years from the date the injury occurred.[2]  When a single action of medical negligence is alleged, the "injury occurs when the wrongful act or omission occurred."[3]  However, the statute creates an exception when the injury "was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person," in which case an action may be brought three years from the date the injury occurred.[4]  In order to utilize the three-year statutory period, "[the plaintiff] must show that the injury could not reasonably have been known [], and that the injury was, in fact, not known to [the plaintiff] during the two year period from the date of the injury."[5]

3.　　The standard of review for a motion for reconsideration is well established.  A motion for reargument under Superior Court Civil Rule 59(e)

---

[1] Jury selection is scheduled to begin tomorrow, July 13, 2016.
[2] 18 *Del. C.* § 6856.
[3] *Dambro v. Meyer*, 974 A.2d 121, 126 (Del. 2009) (citation omitted).
[4] 18 *Del. C.* § 6856(1).
[5] *Reyes v. Kent Gen. Hosp., Inc.*, 487 A.2d 1142, 1144–45 (Del. 1984).

permits the Court to reconsider "its findings of fact, conclusions of law, or judgment . . . ."[6] Indeed, to prevail on a motion for reargument, the moving party must demonstrate that "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[7]

4.  The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[9] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[10]

5.  In issuing its most recent decision in this case addressing the statute of limitation by Order dated April 7, 2016, the Court accepted Plaintiffs' claims that there were material issues of fact in dispute.

---

[6] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969); *Miller v. New Castle Cty. & Dept. of Land Use*, 2016 WL 270531, at *1 (Del. Super. Jan. 21, 2016).

[7] *Lamourine v. Mazda Motor of Am., Inc.*, 2007 WL 3379048, at *1 (Del. Super. Sept. 24, 2007).

[8] Super. Ct. Civ. R. 56.

[9] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).

[10] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

6.  The Court conducted a hearing on July 11, 2016, in advance of empaneling a jury, for a more fully developed record on whether Plaintiffs could establish that they should receive the benefit of the three-year statute of limitations because the alleged negligence could not reasonably have been known and was not in fact known during the two-year period from September 29, 2010. The parties submitted written argument in support of their respective positions.

7.  In consideration of the issues now before this Court, this Court is not acting as a trier of fact, and is not assessing the credibility of evidence. Rather, the Court has engaged in an inquiry as to whether there are or there are not genuine issues of material fact in dispute and whether summary judgment should be entered as a matter of law.

8.  Based on the written submissions of the parties, as well as the record developed at a hearing yesterday, July 11, 2016, at which Plaintiff Candy Vaughn testified and at which twelve exhibits were introduced for the Court's consideration, the Court concludes that there are no material issues of fact in dispute that are relevant to the question of the statute of limitations. Accordingly, the standard for summary judgment has been met. Moreover, the Court concludes that the non-disputed facts would have changed the outcome of this Court's prior decisions with respect to the statute of limitations. Accordingly, the standard for reargument has been met.

9. On September 29, 2010, James Vaughn had an x-ray on his right hip that was interpreted by Dr. Jackerson as, *inter alia*, age compatible degenerative changes—this was the only contact Dr. Jackerson had with James Vaughn ("Alleged Negligent Act"). The undisputed evidence shows that the following events took place within two years following the Alleged Negligent Act:

(a) James Vaughn and his wife, Candy Vaughn, knew James Vaughn had an x-ray and were informed of the results;

(b) James Vaughn continued medical treatment with various physicians, but the pain in his right hip got worse, he lost weight, and had difficulty sleeping;

(c) on May 9, 2011, Candy Vaughn contacted the medical office of James Vaughn's primary care physician, expressed concern that James Vaughn might have bone cancer, and requested that the primary care physician order an MRI and a CBC. Candy Vaughn was notified that the primary care physician wanted James Vaughn to see an orthopedic doctor first and the orthopedic doctor would decide what imaging to request. It was noted that James Vaughn had already had an x-ray of his hip—the x-ray interpreted by Dr. Jackerson on September 29, 2010;

(d) on July 20, 2011, James Vaughn suffered a fracture of his right hip; he was transferred to University of Pennsylvania Hospital and was diagnosed with cancer, specifically dedifferentiated chondrosarcoma in his right hip;

(e) as of August 5, 2011, James Vaughn retained the law firm of Little Page & Associates ("Law Firm #1") regarding a possible claim of medical negligence and Law Firm #1 requested medical records from James Vaughn's medical care providers on his behalf;

(f) on September 21, 2011, James Vaughn met with his new primary care physician, and was accompanied by his wife, Candy Vaughn, for this doctor's visit. The new primary care physician noted that James Vaughn "[h]as some reactive depression, some anger at the med[ical] community in gene[eral] for lack of communication & listening to his complaints over the preceding 18 mo[nth]s before he had a pathological [fracture] of the hip … He does not feel like suing & may not do that, but he understands delaying a [diagnosis] is always something that can be pursued as a suit[;]"[11]

(g) on January 28, 2012, Candy Vaughn met with James Vaughn's prior primary care physician, Dr. Brownstein, who had ordered the September 29, 2010 x-ray because Dr. Brownstein was Candy Vaughn's primary care physician.

---

[11] Defendants' Exhibit 10 (notes of September 21, 2011 office visit with C. Wagner, M.D.)

Although the purpose of the visit was Candy Vaughn's own health concerns, Dr. Brownstein "did take time to go back through his record and noted and we discussed the case. I explained that normal xrays of the hip were the main thing that led the [diagnosis] astray[;]"[12]

(h) as of April 24, 2012, James Vaughn retained the law firm of Schochor, Federico and Staton ("Law Firm #2") regarding a possible claim of medical negligence and Law Firm #2 requested medical records from James Vaughn's medical care providers on his behalf;

(i) James Vaughn died on June 1, 2012. The cause of his death was the dedifferentiated chondrosarcoma;

(j) on June 6, 2012, Law Firm #2 requested medical records of James Vaughn from February 2010 through July 2011; and

(k) on July 13, 2012, medical records were provided to Law Firm #2, including a copy of the September 29, 2010 x-ray report.

10.    The date of the Alleged Negligent Act is September 29, 2010. James Vaughn had actual notice of the Alleged Negligent Act prior to his death on June 1, 2012, or was at least on inquiry notice of the Alleged Negligent Act within the two-year statute of limitations. The Complaint in this medical negligence action

---

[12] Defendants' Exhibit 9 (notes of office visit for Candy Vaughn with Dr. Brownstein).

was filed on July 11, 2013. Accordingly, this action against Defendants is time-barred.[13]

**NOW, THEREFORE, this day of 12th day of July, 2016, Defendants' motions for summary judgment are hereby GRANTED and JUDGMENT is hereby entered in favor of Defendants Jeffrey Jackerson, D.O., Kent Diagnostic Radiology Associates, P.A., and Milford Memorial Hospital and against Plaintiffs.**

**IT IS SO ORDERED**.

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

---

[13] *Dambro*, 974 A.2d at 131; *Meekins v. Barnes*, 745 A.2d 893, 900 (Del. 2000); *Ewing v. Beck*, 520 A.2d 653, 659 (Del. 1987); *Dunn v. St. Francis Hosp.*, 401 A.2d 77, 81 (Del. 1979).