# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LATRECE L. LEWIS, JASON C. )
WILLIAMS, as Power of Attorney for )
MARCIE L. WILLIAMS, )
                                           )
       Plaintiffs, )     C.A. No.: K24C-08-031 NEP
                                             )
     v. )
                                             )
CHURCHMAN VILLAGE OF )
DELAWARE, INC., d/b/a CHURCHMAN )
VILLAGE REHABILITATION & )
NURSING CENTER, a Delaware )
corporation, and BUENA VISTA )
HEALTHCARE, LLC, a Delaware )
Corporation, )
                                             )
       Defendants. )

Submitted: February 27, 2025
Decided: April 25, 2025

## ORDER[1]

### *Upon Review of the Affidavits of Merit*
### COMPLIANT

**1.** This matter involves a medical negligence suit filed by Latrece L. Lewis and Jason C. Williams ("Plaintiffs"), as attorneys-in-fact for the late Marcie L. Williams ("Decedent"), against Churchman Village of Delaware, Inc. and Buena Vista Healthcare, LLC ("Defendants").[2] By motion, Defendants have requested that

---

[1] Citations hereafter in the form of "(D.I. __)" refer to docket items.

[2] Pursuant to Superior Court Civil Rule 25(a), Plaintiffs have indicated that Decedent died during the pendency of this lawsuit. *See* Suggestion of Death (D.I. 14) (indicating, upon information and

this Court review the affidavits of merit submitted with Plaintiffs' complaint to ensure compliance with 18 *Del. C.* § 6853(a)(1) and (c).[3]

2.  On August 30, 2024, Plaintiffs filed a complaint (the "Complaint") bringing claims against Defendants.[4]  Plaintiff avers that, at all relevant times for the purposes of this action, Defendants owned and/or operated a rehabilitation and nursing center to which Decedent was admitted for rehabilitation services.[5] Although Plaintiffs allege many theories of negligence, at core, Plaintiffs contend that Defendants' employees failed to properly diagnose and treat two of Decedent's medical conditions, resulting in a worsening of her condition and other serious complications.[6]

3.  In Delaware, each medical negligence complaint must be accompanied by an affidavit of merit opining as to the negligence of each defendant, signed by an expert, and attaching the expert's current *curriculum vitae*.[7]  The expert must be licensed to practice medicine as of the affidavit's date.[8]  He or she must also have been "engaged in the treatment of patients and/or in the teaching/academic side of medicine in the same or similar field of medicine as the defendant" in the 3 years immediately preceding the alleged negligent act, and must be Board certified in the same or similar field of medicine if the defendant is Board certified.[9]

---

belief, that said death occurred on March 17, 2025).

[3] Mot. for *In Camera* Review of the Aff. of Merit of Churchman Village of Delaware, Inc. D/B/A Churchman Village Rehab. & Nursing Ctr. and Buena Vista Healthcare, LLC (hereinafter "Defendants' Motion") (D.I. 10).

[4] Compl. (D.I. 1).

[5] *Id.* at ¶¶ 7, 9.

[6] *See generally id.* at ¶ 29.

[7] 18 *Del. C.* § 6853(a)(1).

[8] *Id.* § 6853(c).

[9] *Id.*  The requirements regarding Board certification apply only if the defendant is a physician. *Zappaterrini v. St. Francis Hosp., Inc.*, 2009 WL 1101618, at *1 (Del. Super. Apr. 22, 2009) ("[B]ecause the defendant is not a physician, the statutory requirement of similar Board certification is not applicable."); *McNulty v. Correct Care Sols., LLC*, 2017 WL 1323711, at *2 (Del. Super. Apr. 7, 2017) (noting that "same or similar" Board certification does not apply where

**4.** The affidavit must indicate that reasonable grounds exist to believe that the applicable standard of care was breached by each defendant and that the breach was a proximate cause of the injuries alleged in the complaint.[10] Additionally, the affidavit must be filed under seal; upon request, it may be reviewed *in camera* to ensure compliance with statutory requirements.[11] The requirements for affidavits are "purposefully minimal" in that the General Assembly "did not intend a minitrial at this stage of the litigation."[12] An affidavit need not repeat verbatim the statutory language; rather, its statements need only represent the functional equivalent of the statutory language to be judicially acceptable.[13] As the filing of an affidavit of merit is a duty in derogation of the common law, the Court must narrowly construe the requirements for such an affidavit.[14]

**5.** Plaintiff's Complaint was accompanied by two affidavits of merit, which were both received by the Prothonotary's office on August 30, 2024.[15] One affidavit was authored by a medical doctor currently serving as a professor of medicine (the "Physician Affidavit"), while the other was authored by a registered nurse (the "Nurse Affidavit").

**6.** As requested by Defendants, the Court has performed an *in camera* review of the affidavits of merit filed with the Complaint. As to the affidavits in question, the Court finds as follows:

---

defendant is not a physician).

[10] 18 *Del. C.* § 6853(c).

[11] *Id.* § 6853(a)(1), (d).

[12] *Dishmon v. Fucci*, 32 A.3d 338, 342–43 (Del. 2011).

[13] *Id.*; *see also id.* at 344 ("Medical experts need not couch their opinions in legal terms, state the facts that underly their determination, or to [sic] articulate the standard of care with a high degree of legal precision or 'magic words.'" (citation omitted)).

[14] *Hodge v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1068228, at *3 (Del. Super. Apr. 9, 2025) (citations omitted); *accord Gibson v. Keith*, 492 A.2d 241, 247 (Del. 1985) ("[S]trict, rather than liberal, construction of legislation in derogation of the common law is the rule." (citing *Carper v. Bd. of Educ.*, 432 A.2d 1202 (Del. 1981); *State v. Brown*, 195 A.2d 379 (Del. 1963))).

[15] *See* D.I. 1.

3

a. Each affidavit is signed by its respective author.

b. The current *curriculum vitae* of each affiant is attached to his or her respective affidavit.

c. In each affidavit, the affiant concludes that there are reasonable grounds to believe that Defendants violated the applicable standard of care and that this breach was a proximate cause of the injuries to Decedent alleged in the Complaint.

d. Neither affidavit identifies the specific date of the allegedly negligent act or omission giving rise to this suit.

e. As of the date he signed it, the author of the Physician Affidavit was licensed to practice medicine in two states. He was also board certified in Internal Medicine. Since 1995, he has been involved in the "teaching/academic side of medicine in the same or similar field of medicine as the . . . defendants," as contemplated under the statute.[16] Specifically, for the three years prior to the events giving rise to this case, he was an associate professor of medicine, teaching nursing home/rehabilitation hospital patient care and office practice.

f. As of the date she signed it, the author of the Nurse Affidavit was a registered nurse ("R.N.") licensed to practice in the state of Delaware. She was an emergency-room R.N. from 2016 to 2022, and thereafter a "consultative nurse." Per her affidavit, the affiant worked in the same or similar field as Defendants' nursing home/rehabilitation center "in the year preceding the alleged negligent acts named in the Complaint[.]"

7. Upon a review of the Physician Affidavit, the Court concludes that the

---

[16] *See* 18 *Del. C.* § 6853(c).

affidavit satisfies the statutory requirements. In their motion seeking *in camera* review, Defendants ask that the Court determine whether all opinions therein are stated to a reasonable degree of medical probability,[17] and contend that any affidavit of merit must identify the date of the alleged negligent act.[18] The Court notes that the Physician Affidavit does neither, but concludes that neither omission renders the affidavit defective, because neither requirement is present in the statute.

8. Rather than requiring that opinions be stated to a "reasonable degree of medical probability," the statute merely requires that an affidavit "stat[e] that there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant."[19] The interpretation Defendants appear to wish this Court to adopt would set a higher standard than that required by statute, which would be contrary to this Court's duty to construe plaintiffs' obligations thereunder narrowly.[20]

9. Similarly, the statute contains no requirement that an affiant pinpoint the date on which the alleged negligence occurred. In *Dishmon v. Fucci*, the Supreme Court emphasized that "[m]edical experts need not . . . state the facts that underly their determination" to comply with the statute.[21] Defendants, however, cite an earlier Supreme Court decision, *Dambro v. Meyer*,[22] for the proposition that the affiant must "identify when the breach took place."[23] Defendants' reading both over-interprets and misinterprets *Dambro*. *Dambro* turned on whether the applicable statute of limitations had passed in a case alleging medical malpractice

---

[17] Defendants' Motion 4 (D.I. 10).
[18] *Id.* at 2.
[19] 18 *Del. C.* § 6853(a)(1).
[20] *See Zappaterrini*, 2009 WL 1101618, at *2 (holding that the "reasonable degree of medical probability" standard does not apply to affidavits of merit); *Porter v. Christiana Care Health Servs., Inc.*, 2016 WL 2894038, at *1 (Del. Super. May 11, 2016) (same).
[21] *Dishmon v. Fucci*, 32 A.3d 338, 344 (Del. 2011).
[22] 974 A.2d 121 (Del. 2009).
[23] Defendants' Motion 2 (D.I. 10).

for failing to diagnose the plaintiff's cancer.[24]  The Court therefore went to great lengths to explain when the statute of limitations began to run.[25]  Despite this depth of analysis, the *Dambro* Court nowhere stated that affidavits of merit must specify the date of the negligent act(s) giving rise to the suit.[26]  Such a requirement does not exist in the statute, and, consistent with *Dishmon*, an affidavit need only "track the statutory language" to comply therewith.[27]  The Physician Affidavit does so.  In *Parker v. Momorella*, this Court declined to examine whether the relevant affidavit included the date of the alleged negligence for the same reason:  such inclusion is not a requirement of the statute.[28]

**10.**  Since the Court has concluded that the Physician's Affidavit satisfies all statutory requirements, it need not consider the Nurse's Affidavit.  18 *Del. C.* 6853(a)(1) requires only "[a]n affidavit of merit as to each defendant[.]"  The Physician's Affidavit addresses the alleged negligence of both Defendants, and need not, therefore, be supplemented by a second affidavit.  Under the statute, only one compliant affidavit is required.  "The General Assembly intended the affidavit of merit merely to operate 'as a prophylactic measure' to 'reduce the filing of meritless medical negligence claims.'"[29]  Since the requirement of an affidavit of merit is intended merely to "weed out frivolous claims,"[30] its purpose is served so long as

---

[24] *Dambro*, 974 A.2d at 135–37.

[25] *Id.*

[26] Rather, the Court emphasized that "[t]he 2003 amendments to the Medical Negligence Act, including the requirement in section 6853 that all complaints alleging medical negligence be accompanied by an affidavit of merit, *did not change or modify the date on which the injury occurred*" for purposes of triggering the statute of limitations.  *Id.* at 137 (emphasis supplied).

[27] *Dishmon*, 32 A.3d at 342–43; *accord id.* at 344 ("[A]lthough the expert's statement does not mirror Section 6853 exactly, his statement is the functional equivalent of the statutory language, and thus, satisfies the requisite proximate cause standard.").

[28] 2024 WL 4544099, at *2 (Del. Super. Oct. 22, 2024).

[29] *Mammarella v. Evantash*, 93 A.3d 629, 637 (Del. 2014) (quoting *Dishmon*, 32 A.3d at 342).

[30] *Vareha v. Beebe Med. Ctr., Inc.*, 2011 WL 2361270, at *4 (Del. Super. May 26, 2011).

*one* qualified expert authors an affidavit satisfying the statutory requirements.[31]  As such, the Nurse Affidavit was not required.

11.     As the Court has opted not to consider the merits of the Nurse Affidavit, an explanation of that decision's implications may be helpful to the parties.  Most significantly, it does not preclude the affiant nurse from testifying at trial, if she would otherwise be qualified to do so (a point on which the Court also expresses no opinion).  "[T]he standards for trial testimony and an affidavit of merit are different."[32]  Although the author of an affidavit of merit may be qualified to testify at trial, authoring an affidavit of merit is not a prerequisite to such testimony.[33]  Nor is an individual necessarily barred from testifying as an expert at trial because he or she is not qualified to author an affidavit of merit.  This understanding of the General Assembly's intent is confirmed by the confidentiality of each affidavit's author,[34] which limits a defendant's ability to recognize, much less complain about, a plaintiff's decision to call a different expert for trial.

12.     This Court is also reluctant to consider the Nurse's Affidavit on the merits due to some confusion in Superior Court case law, which the Supreme Court has yet to resolve.  As noted *supra*, 18 *Del. C.* § 6853(c) requires that any expert signing an affidavit of merit be licensed to practice medicine.  Whether this provision

---

[31] *Cf. id.* (holding that requiring a second affidavit of merit was unnecessary, where plaintiff later discovered that a different physician was responsible for the acts complained of, and this physician was substituted as defendant).

[32] *Saddler v. Nanticoke Memorial Hospital*, 2012 WL 6846550, at *5 n.24 (Del. Super. Dec. 24, 2012) (citing *Wilson v. James*, 2010 WL 1107787, at *2 (Del. Super. Feb. 19, 2010)).

[33] *See Mammarella*, 93 A.3d at 637 ("Of course, the expert witness who provides an affidavit of merit might be capable of testifying to facts that establish more than a prima facie case. If those facts were sufficient to support a jury verdict, then the plaintiff would be entitled to have the jury decide the case. But that would be because the expert witness was qualified to testify as to the required elements necessary to support a jury verdict. In that case, the person filing the affidavit should be identified as a trial witness and be made available for deposition by the other side.").

[34] *See Clendaniel v. Bayhealth Med. Ctr., Inc.*, 2020 WL 7787063, at *2 (Del. Super. Dec. 29, 2020) ("The Affidavit of Merit is a confidential filing by the plaintiff to the Court and statutorily 'shall be and shall remained sealed and confidential.'" (quoting 18 *Del. C.* § 6853(a)(1))).

7

permits licensed nurses to author affidavits of merit is uncertain, and this Court has determined that it would be unwise to answer that question when it is not necessary to the resolution of Defendants' motion.

13.    The Court will, however, provide some guidance on the nature and source of the ambiguity in this Court's precedent. Some decisions of this Court have held that nurses are not "licensed to practice medicine" under the statute, but that they may nonetheless author affidavits of merit in certain circumstances. In *Dougherty v. Horizon House, Inc. et al.*, the Court noted that Delaware law prescribes "certification requirements to practice medicine," including that such practitioner possess a "degree of Doctor of Medicine or Doctor of Osteopathy."[35] Since the nurse in that case did not possess either degree, the Court reasoned that she could not be licensed to practice medicine under Delaware law.[36] Nonetheless, the *Dougherty* Court concluded that a nurse practitioner could author an affidavit against an institutional defendant because the "licensed to practice medicine" requirement "may not" have been applicable "where no claim against an individual healthcare provider [was] asserted."[37] Other opinions have followed suit, frequently with little if any analysis.[38] Just last year, in *Cross v. Davis*, this Court accepted

---

[35] 2008 WL 3488532, at *4 (Del. Super. June 25, 2008) (citing 24 *Del. C.* § 1720(a)–(c)). Delaware law also appears to recognize a "practice of professional nursing." *See* 24 *Del. C.* § 1920(a) ("No person shall engage in the practice of professional nursing in Delaware without being licensed by the Board [of Nursing], except those persons issued a temporary permit by the Board.").

[36] The Court described the case before it as one in which "an expert [was] qualified as to the standard of care and as to causation, but [was] not 'licensed to practice medicine.'") *Id.* at *5.

[37] *Dougherty*, 2008 WL 3488532, at *5.

[38] *See, e.g.*, *Wagner v. Christiana Care Health Servs., Inc.*, 2015 WL 13697661, at *1 (Del. Super. Oct. 15, 2015) ("Here, Plaintiffs claim bedsores and subsequent injuries as a result of Defendant's alleged nursing care. Accordingly, Plaintiff's expert is a registered nurse, which complies with § 6853(a)(1)." (citing *Dougherty*, 2008 WL 3488532; *Green v. St. Francis Hosp., Inc.*, 791 A.2d 731 (Del. 2002) (holding that a nurse could testify as an expert *at trial* in case of alleged nursing negligence)); *Daniels v. Green Valley SNF LLC*, 2022 WL 1637201, at *1 (Del. Super. May 23, 2022) (noting that, in suit against institutional defendant, of two affidavits, "[t]he first expert witness was licensed to practice medicine as of the date of the affidavit. The second expert witness is not licensed to practice medicine; she was a licensed Registered Nurse as of the date of the

*Dougherty*'s conclusion that a nurse practitioner was not licensed to practice medicine, but held that the statutory requirement for an affiant to "practice medicine" was applicable only to suits against physician defendants.[39]

14.     Other decisions of this Court, however, appear to assume that a license to practice nursing is interchangeable with a license to practice medicine, at least for purposes of authoring an affidavit of merit. This Court is aware of at least two such decisions, neither of which contained any analysis supporting that assumption, nor a formal holding that a licensed nurse is licensed to practice medicine.[40]

15.     A 2021 decision of the Delaware Supreme Court has cast doubt on some of this Court's affidavit-of-merit decisions, and in particular on those holding that an affiant need not be "licensed to practice medicine" if the defendant is a nurse or institution. In *Nichols v. Christiana Care Health System*, the Court held that a plaintiff's expert must be licensed to practice medicine both in suits against medical practitioners and in suits against institutions employing them.[41] In *Nichols*, the sole defendant was an institution, but the Court nonetheless found the affidavit of a certified nursing assistant insufficient:

---

affidavit," but nonetheless finding only the first affidavit deficient); *see also Ward v. Milford Ctr., L.L.C.*, 2020 WL 4208488, at *1 & n.7 (Del. Super. July 22, 2020) (approving affidavit of merit in negligent nursing care case without addressing whether the author was licensed to practice medicine) (citing *Wagner*, 2015 WL 13697661).

[39] 2024 WL 4503673, at *2 (Del. Super. Oct. 15, 2024).

[40] *See Zawask v. Christiana Care Health Servs., Inc.*, 2020 WL 3866512, at *1 (Del. Super. July 7, 2020) (quoting the "licensed to practice medicine" requirement, observing that the affiant was licensed to practice nursing in Pennsylvania, and holding that the affidavit at issue, which alleged "nursing negligence" of two institutional defendants' employees, was compliant with statutory requirements); *Cousineau v. Christiana Care Health Servs., Inc.*, 2009 WL 406821, at *1 (Del. Super. Jan. 9, 2009) (reserving decision on an R.N.'s affidavit of merit alleging nursing negligence of an institutional defendant because the affiant's *curriculum vitae* did not indicate the dates of her nursing license or board certifications). It appears that the same result would have been reached in both cases had the *Dougherty* and *Cross* approach been applied, but neither opinion contained any such analysis.

[41] 266 A.3d 976, 2021 WL 5349943, at *2 (Del. Nov. 16, 2021) (ORDER).

> Even assuming that the affidavit satisfied the other statutory requirements, we conclude that the . . . affidavit did not comply with the requirement that the "expert signing an affidavit of merit shall be licensed to practice medicine as of the date of the affidavit." The affidavit stated that [the affiant] was a "certified Nursing Assistant"; it did not indicate that she was "licensed," nor did the various attachments to the affidavit include a medical or nursing license issued to [her].[42]

The Court expressly declined, however, to determine whether an individual with a nursing license would qualify as a person "licensed to practice medicine."[43]

**16.** Until recently, decisions of this Court had not addressed the *Nichols* decision, nor its holding that all authors of affidavits of merit must be licensed to practice medicine regardless of whether the defendant at issue is an institution or an individual. For the reasons stated *supra*, this Court will not attempt to draw out all the implications of that holding. However, it should be noted that the apparent demise of the *Dougherty* approach does not necessarily mean that nurses are precluded from authoring affidavits of merit (as stated *supra*, a conclusion the *Nichols* Court explicitly declined to reach). It may be that the phrase "licensed to practice medicine" is sufficiently broad to include registered nurses, and that a licensed nurse's ability to author an affidavit of merit therefore turns exclusively on whether he or she has been "engaged in the treatment of patients and/or in the teaching or academic side of medicine in the same or similar field of medicine as the defendant,"[44] and whether he or she is "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify."[45] Just this month, in *Hodge v. Bayhealth Medical Center, Inc.*, this Court—grappling for the first time with *Nichols*—held that a licensed nurse *practitioner* was "licensed to practice

---

[42] *Id.*
[43] *Id.* at *2 n.13.
[44] 18 *Del. C.* § 6853(c).
[45] *Id.* § 6854 (setting the standard for expert medical testimony); *id.* § 6853(a)(1) (applying that standard to affidavits of merit).

medicine" and therefore qualified to author an affidavit of merit.[46]

**WHEREFORE**, in consideration of the foregoing, the Court finds that at least one affidavit of merit submitted by Plaintiffs satisfies the statutory requirements of 18 *Del. C.* § 6853(a) and (c). The Court therefore finds that affidavit of merit, and by extension Plaintiffs' Complaint, to be **COMPLIANT**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc:   Prothonotary
cc:   Counsel of Record

---

[46] 2025 WL 1068228, at *4. The Court also noted the possibility that some claims against institutional defendants for "negligent administration" may not be medical malpractice claims, and therefore might not require an affidavit of merit. *Id.* at *3 (citing *Saddler*, 2012 WL 6846550, at *5; *Palacio for Mitchell v. Premier Healthcare, Inc.*, 2015 WL 13697664, at *1 (Del. Super. Aug. 11, 2015)).

11