COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHLEEN M. MILLER
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10501
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

January 7, 2026

Theodore A. Kittila, Esq.
M. Jane Brady, Esq.
William E. Green, Jr., Esq.
Halloran Farkas + Kittila LLP
5722 Kennett Pike
Wilmington, DE 19807

Stephen B. Brauerman, Esq.
Emily L. Skaug, Esq.
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801

RE:     *Lytle v. Lytle Intermediate, LLC*
        C.A. No.: 2025-0639 KMM

Dear Counsel:

This letter decision resolves Defendant's Motion to Stay.[1]

## I.     *Factual Background*

This action arises out of Plaintiffs-Sellers' and Defendant-Buyer's dispute relating to the calculation of various post-closing adjustments and escrows provided for in the parties' Membership Interest Purchase Agreement ("MIPA"). At closing, $300,000 of the Cash Consideration[2] for the transaction was placed in escrow as the

---

[1] D.I. 15 ("Motion"). The Court took this matter under advisement after the November 4, 2026 hearing.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the MIPA.

Adjustment Escrow Amount, $1.1 million was withheld as the Indemnity Escrow Amount, and an additional $1 million as the Earnout Escrow Amount.

The MIPA required that within 120 days of the December 7, 2023 closing, Buyer was to prepare a Closing Balance Sheet[3] and Earnout Statement.[4] The Closing Balance Sheet was to be prepared in accordance with Exhibits E and F to the MIPA, and set forth Buyer's calculation of Cash on Hand and aggregate Cash Consideration.[5] Based on the Closing Balance Sheet, Buyer was also to prepare a Post-Closing Adjustment based on the formula in the agreement, along with "the specific detailed calculations."[6] The Earnout Statement was to be prepared pursuant to the terms and formulas in Section 1.6 of the MIPA.

If Sellers did not object within 30 days following receipt of the Earnout Amount[7] or the Post-Closing Adjustment,[8] the calculations would become final and binding. If Sellers objected, they had to notify Buyer and set "forth in specific detail the basis for [their] objection and [their] proposal for any adjustments to the Post-Closing Adjustment or the Cash on Hand amount, as applicable."[9]

---

[3] MIPA § 1.4(a), (e).
[4] *Id.* § 1.6(b).
[5] *Id.* § 1.4(c).
[6] *Id.* § 1.4(d).
[7] *Id.* § 1.6(c).
[8] *Id.* § 1.4(d).
[9] *Id.* § 1.4(e).

If Sellers objected within the 30-day period, the MIPA required that the parties use "commercially reasonable efforts" to reach agreement.[10] If the parties fail to reach agreement on objections to the Post-Closing Adjustment, the MIPA provides:

> … the Neutral Accountant shall be engaged to review the proposed adjustments as to which agreement has not been reached and shall make a determination as to the resolution of the proposed adjustments to cause the Post-Closing Adjustment or the Cash on Hand amount, as applicable, to have been properly prepared in accordance with the provisions of this Agreement. Each party shall be given the opportunity to make presentations to such Neutral Accountant.[11] All resolutions shall represent either agreement with the position taken by Buyer or Seller or a compromise between such positions. The determination of the Neutral Accountant shall be final and binding on the Parties for all purposes hereunder.[12]

With respect to the Earnout Amount, essentially the same process is followed: if Sellers object, they must state "in specific detail the basis for [the] objection and [their] proposal for any adjustments to the amount set for the therein, if any."[13] If the parties are unable to resolve the objections, the "Neutral Accountant shall be engaged to determine the applicable Earnout Amount, if any."[14] The determination of the Neutral Accountant "shall be final and binding on the Parties."[15]

---

[10] *Id.* §§ 1.4(e), 1.6(d).
[11] The Neutral Accountant is a nationally-recognized certified public accounting firm agreed upon by the parties. *Id.* § 7.1(ll).
[12] *Id.* § 1.4(f).
[13] *Id.* § 1.6(d).
[14] *Id.*
[15] *Id.*

Sections 1.4(f) and 1.6(d) include a provision for payment of the Neutral Accountant's fees.[16]  Under Section 1.4(f), the fees are assessed against the parties "based on the inverse of the percentage that the Neutral Accountant's determination bears to the disputed amount as originally submitted to the Neutral Accountant."[17] Under Section 1.6(d), the fees are to be paid by the party whose calculation of the Earnout Amount "is further from the calculation by the Neutral Accountant."[18]

The parties also agreed to jurisdiction exclusively in the Court of Chancery in "any action or proceeding arising out of or related to this Agreement."[19]  Disputes "concerning Unresolved Objections[20] in connection with the Closing Balance Sheet" are the sole exception to the jurisdictional provision.[21]  "[T]he Neutral Accountant "shall resolve all issues relating to the preparation of the Closing Balance Sheet and the Closing Net Working Capital[.]"[22]

There is no dispute that the Closing Balance Sheet, Post-Closing Adjustment, and Earnout Sheet were not delivered within 120 days of Closing (the "Timing Dispute").  Twelve days after the 120-day period, Buyer provided Sellers with a set

---

[16] *Id.* §§ 1.4(f), 1.6(d).
[17] *Id.* § 1.4(f).
[18] *Id.* § 1.6(d).
[19] *Id.* § 8.7.
[20] Unresolved Objections is defined as "any objections set forth on Seller's statement of objections that remains unresolved fifteen (15) days after delivery of such statement of objections." *Id.* §7.1(ppp).
[21] *Id.* § 8.7.
[22] *Id.*

of documents.  The parties dispute whether these documents satisfy the requirements of the MIPA (the "Documents Dispute").

Sellers assert that the documents provided on May 9 were a Closing Net Working Capital amount and a Post-Closing Adjustment amount.  Sellers contend that Buyer never provided the Closing Balance Sheet from which it calculated the Post-Closing Adjustment and never provided the Earnout Statement. Nonetheless, Sellers timely served objections (and supplemental objections) to the documents provided by Buyer.

## II.     *Procedural Background*

After a 30-day negotiation period, Sellers refused to engage in the Neutral Accountant process.  Rather, they filed this action asserting four counts: (1) breach of contract for failure to deliver the Closing Balance Sheet and seeking the remedy of release of $300,000 Adjustment Escrow Amount; (2) breach of contract for failure to timely deliver the Earnout Statement, seeking the remedy of release of $1 million Earnout Escrow Amount; (3) breach of contract for failure to deliver joint instructions on the first anniversary of the closing for release of 50% of the Indemnity Escrow Amount; and (4) fraud.[23]

---

[23] D.I. 1.

Buyer answered the complaint and asserted a counterclaim.[24] Buyer then filed the Motion to Stay.

## III. *The Motion to Stay*

Buyer's Motion to Stay (the "Motion") requests the court "stay this case and compel submission of the Post-Closing Adjustment and Earnout Amount disputes to a Neutral Accountant."[25] In support, Buyer provides the Declaration of William Berry Dean, who is the manager of a private equity firm that formed Buyer to consummate this transaction and who has "been involved" in the transaction.[26]

Mr. Dean states that plaintiff Karilyn Lytle remained the CEO of the Acquired Companies after the transaction closed and she "had access to all relevant financial information of the Acquired Companies, and was expected to (and did) assist in the preparation of the post-closing statements."[27] According to Mr. Dean, it took much longer than expected to prepare and finalize the relevant financial reports.[28] He asserts that Ms. Lytle raised potential issues with 2023 billing and revenue recognition, which she investigated on her own and reported on her progress.[29]

---

[24] D.I. 14.
[25] Motion at 14. The fraud and indemnification claims are not the subject of the Motion.
[26] The Dean Declaration includes 10 exhibits relating to the post-closing communications.
[27] D.I. 16 (Dean Declaration) ¶ 3.
[28] *Id.* ¶¶ 3-5.
[29] *Id.*

According to Mr. Dean, Ms. Lytle worked with the retained accountant[30] "in connection with the closing of 2023 financial books" of the Acquired Companies.[31] During this process, she identified additional issues potentially impacting the Earnout Amount.[32]

As the 120-day deadline (April 5, 2024) approached, Mr. Dean states he and Ms. Lytle agreed that more time was needed to prepare the post-closing financial documents to accommodate her concerns.[33] Mr. Dean describes the communications with Ms. Lytle and the retained accountant that occurred between April 16 and early May regarding various post-closing documents.[34] Mr. Dean further states that the parties continued to work together, which included Ms. Lytle continuing her "investigation of financial-related matters and regular emails and telephone calls."[35]

On May 17, 2024, Buyer received Sellers' Objection which identified an alleged material breach of the agreement by failing to provide the supporting documents required by the MIPA.[36] A supplemental Objection was received on June 7.[37]

---

[30] The "retained accountant" is Bennett Thrasher.
[31] *Id.* ¶ 4.
[32] *Id.*
[33] *Id.* ¶ 5.
[34] *Id.* ¶¶ 6–8.
[35] *Id.* ¶ 9.
[36] *Id.* ¶ 10.
[37] *Id.* ¶ 10.

The parties worked on the disputes and Buyer offered to extend the 30-day negotiation period in an attempt to resolve the disputes.[38]  However, it became clear that a resolution would not be reached, so Buyer sent a notice to Sellers suggesting that the parties engage in the Neutral Accountant process.  Sellers refused to do so.[39]

Sellers oppose the Motion and submit the Declaration of Ms. Lytle.[40]  She testifies that after the December 7, 2023 closing, "all financial and accounting procedures for the Acquired Companies were placed out of [her] control."[41]  A new controller, hired February 5, 2024, changed the QuickBooks program to the online platform and removed Ms. Lytle's access to the system by February 19.[42]  The new controller also changed the Acquired Companies from a cash basis to an accrual accounting system.[43]

Ms. Lytle provides her version of the communications with Mr. Dean and the accountant during this time.[44]  She explains that after the 120-day deadline passed, she was promised the post-closing documents shortly thereafter.  On April 16, Sellers received a "draft work for the rollforward through September" with a link to a 262-megabyte Excel workbook representing the "raw file."[45]  Due to the size, the

---

[38] *Id.* ¶ 11.
[39] *Id.* ¶ 12.
[40] D.I. 23 (Lytle Declaration).  The Lytle Declaration includes 10 exhibits.
[41] *Id.* ¶ 2.
[42] *Id.* ¶¶ 3–4.
[43] *Id.* ¶ 3.
[44] *Id.* ¶¶ 5-9.
[45] *Id.* ¶ 10.

document could not be accessed.[46]  Buyer then sent three separate files titled "NWC Analysis," "Source Data File," and "Unlinked BT Analysis."[47]

Ms. Lytle further contends that the workbooks do not constitute a Closing Balance Sheet, Post-Closing Adjustment statement, or Earnout Statement (nor are the workbooks identified as such),[48] and Buyer did not claim that they constituted its final closing statements.[49]  Attached as Exhibit 6 to the Lytle Declaration is a chart identifying the post-closing deliverables Buyer was obligated to provide, and the date provided, if in fact they were was provided.[50]  Ms. Lytle contends Buyer never provided much of the supporting information required by the MIPA.[51]  Ms. Lytle goes on to explain the communications between the parties prior to initiation of this action.[52]

## IV.  *The parties' contentions*

Buyer makes two arguments in support of its contention that the MIPA requires the parties to submit their disputes to the Neutral Accountant.[53]  First, providing the Earnout Statement or Closing Balance Sheet within 120 days of

---

[46] *Id.* ¶ 10.
[47] *Id.* ¶ 11.
[48] *Id.* ¶ 12.  Ms. Lytle admits that workbooks included a tab entitled "Earnout Summary."
[49] *Id.* ¶ 12.
[50] *Id.* ¶ 15, Ex. 6.
[51] *Id.*
[52] *Id.* ¶¶ 16-22.
[53] Buyer also sought to compel mediation under the MIPA.  It abandoned this position at oral argument.

Closing is not a condition precedent to submitting the disputes to the Neutral Accountant. Second, even if providing these documents were a condition precedent, Buyer's failure is excused because a 12-day delay was not a material breach.

Sellers counter that Buyer is seeking specific performance, which requires it to show by clear and convincing evidence that it is entitled to such relief. Buyer cannot do so because it did not provide the post-closing documents as required by the MIPA, thereby materially breaching the agreement. Even if this failure is not material, Sellers continue, the parties cannot engage with the Neutral Accountant because Buyer has not provided the necessary documents. Furthermore, the Neutral Accountant is not authorized to decide whether Buyer waived its rights under the ADR process.

## V.       *Standard of Review*[54]

At the pleading stage, if the movant relies on documents outside the pleadings, the court will apply the summary judgment standard.[55]  "Summary judgment is only appropriate where, viewing the facts in the light most favorable to the non-moving party, the moving party has demonstrated that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[56]  "The role of a trial court . . . is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide such issues.  In discharging this function, the court must view the evidence in the light most favorable to the non-moving party."[57]

---

[54] In the Motion, Buyer does not identify any court rule or standard of review to apply to the Motion.  When asked at oral argument, Buyer first did not know what standard to apply.  On rebuttal argument, Buyer stated that if the Court considers the declarations, Rule 56 "is likely the standard" and if the Court just considered the pleadings, Rule 12(c) would apply.  After argument, without Court permission, Buyer filed a four page letter now arguing that a Rule 12(b)(1) standard should be applied.  D.I. 38.  Buyer's newly minted position makes arguments and cites cases not addressed in the briefs or at oral argument and purports to shift the burden of proof to Sellers.[54]  Sellers object to this additional submission. D.I. 39.

Court rules do not permit a party to make additional filings after briefing is complete. *See* Ch. Ct. R. 7(c)(1).  Allowing Buyer to recast its Motion prejudices Sellers because the Motion was argued under the posture of Buyer bearing the burden of proof.  Now, Buyer attempts to shift the burden of proof to Sellers and relies on newly cited authorities.  Sellers did not have an opportunity to address these issues in the briefing.  Therefore, the Court will not consider Buyer's submission.

[55] Ct. Ch. R. 56.  Buyer's arguments rely heavily on the Dean Declaration, thus Rule 56, not 12(c), is applied.

[56] *B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*, 2024 WL 3451459, at *19 (Del. Ch. July 18, 2024) (citing *Dambro v. Meyer*, 974 A.2d 121, 138 (Del. 2009)).

[57] *Applied Energetics, Inc. v. Farley*, 239 A.3d 409, 425 (Del. Ch. 2020) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992)).

11

Summary judgment "must be denied if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to material fact or the inferences to be drawn therefrom."[58]

## VI. *Discussion*

Sellers argue, and Buyer does not dispute, that to specifically enforce the Neutral Accountant provision, Buyer must prove it is entitled to such relief by clear and convincing evidence.[59]  "An order compelling an expert determination 'is in fact an order compelling specific performance' of an alleged duty arising from, and, indeed, governed by the contractual term creating it."[60]  The party seeking such specific performance bears the burden of showing that the agreement "clearly and convincingly creates such a duty."[61]

### A. *The Neutral Accountant provision*

The first step in the analysis is to determine whether the Neutral Accountant provision provides for an arbitration, an expert determination, or something in between.

> At one end [of the spectrum] is an arbitration that has the look and feel of a judicial proceeding, except that it is handled privately and with less formality.  At the other end is an expert determination in which an

---

[58] *Id.* (citing *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970)).
[59] D.I. 40 (November 4, 2025 Transcript ("Tr.")) at 7.
[60] *Village Practice Mgt. Co., LLC. v. West*, 342 A.3d 295, 321 (Del. 2025).
[61] *Id.*

expert with technical skills or knowledge makes a determination, largely on its own, and with only limited party input.[62]

A "classic arbitration" or "legal arbitration" provision generally has characteristics similar to litigation, including an established set of rules, admission of evidence and testimony, the award being enforceable the same as a court judgment, and is governed by the Federal Arbitration Act ("FAA") or its state law counterpart.[63] An expert provision typically does not have an established set of rules and takes on an inquisitorial, investigative approach. Expert determinations are usually not reviewable by a court and are governed by state contract law, not the FAA or its state counterpart.[64]

In between an expert determination and an arbitration is another "well-established" alternative dispute resolution ("ADR") mechanism—the Accountant True-Up.[65] Generally, this dispute resolution mechanism is characterized by the purchaser preparing a post-closing statement, providing the seller with an opportunity to object and if an objection is asserted, after a period of negotiations, submitting the dispute to an accountant for resolution.[66]

---

[62] *ArchKey Intermediate Holdings Inc. v. Mona*, 302 A.3d 975, 989 (Del. Ch. 2023).
[63] *Id.* at 989–90.
[64] *Id.* at 990.
[65] *Id.*
[66] *Id.* at 991.

The determination of which ADR mechanism the parties contemplated is dependent of the type and scope of authority delegated to the decision maker.[67] An arbitration provision will empower the decision maker to "decide all legal and factual issues necessary to resolve the matter."[68] In contrast, an expert determination is less formal and the expert is "not bound to the strict judicial investigation of an arbitration."[69] A typical Accountant True-Up Mechanism "is a beefed-up expert determination, not a slimmed down legal arbitration."[70] Thus, an Accountant True-Up Mechanism will be governed by contract interpretation principles.[71]

Here, the Neutral Accountant provision is an Accountant True-Up Mechanism.[72] The MIPA requires that Buyer prepare and deliver the Closing Balance Sheet with certain calculations and the Earnout Statement, grants Sellers an opportunity to object, and after a period of negotiations, the Neutral Accountant is to be engaged.[73] Disputes submitted to the Neutral Accountant are limited to the outstanding objections. While the parties have an opportunity to make presentations to the Neutral Accountant, there are no preset procedural rules, and the decision is final and binding on the parties, with no right for court review.

---

[67] *Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 618 (Del. 2023) (citation omitted).
[68] *Id.*
[69] *Id.*
[70] *ArchKey*, 302 A.3d at 995.
[71] *Terrell*, 297 A.3d at 619 (citation omitted).
[72] Neither side argued that the Neutral Accountant provision is a legal arbitration provision.
[73] MIPA §§ 1.4(d), 1.6(d).

## B.      *Scope of the Neutral Accountant's authority*

Buyer argues that the Neutral Accountant is given sole discretion to determine the Document Dispute (whether the Closing Balance Sheet and Earnout Statement conform to the requirements of the MIPA). It submits that several cases decided by this court stand for the proposition that a neutral accountant has investigatory powers and is to make the determination of whether documents comply with the parties' agreement.[74] Buyer admits, however, that the Court must decide the Timing Dispute (whether Buyer waived its right to enforce the ADR process by not timely providing the post-closing documents).[75]

Simply labeling the ADR process as an "expert determination" does not mean that all issues are properly submitted to the Neutral Accountant, as Buyer suggests. As noted, the scope of the decision maker's authority will depend on the terms of the parties' agreement. In the MIPA, the parties agreed that any action or proceeding "arising out of or related to" the MIPA, shall be brought in the Court of Chancery.[76] The sole carveout is for disputes concerning Unresolved Objections in connection with the Closing Balance Sheet, which issues shall not be heard by the court.[77] Buyer

---

[74] Tr. at 14-19. Buyer relies on *Aveta v. Bengoa*, 2008 WL 5255828 (Del. Ch. Dec. 11, 2008). There, the parties' agreement called for an arbitration and delegated to the arbitrator (the Reviewing Accountant) "all matters in dispute." The court ruled that the adequacy of the post-closing documents fell within the scope of issues to be arbitrated. As discussed below, the parties here did not delegate such broad authority to the Neutral Accountant.

[75] Tr. at 9–10.

[76] MIPA §§ 8.6, 8.7.

[77] *Id.* § 8.7.

15

would have the Court stop the analysis here and declare, based on Section 8.7 alone, that the Neutral Accountant is authorized to determine whether the post-closing documents comply with the MIPA. The Court, however, must review the contract as a whole.[78]

The MIPA limits the scope of the Neutral Accountant's authority. In Section 1.4, the Neutral Accountant is authorized to resolve the conflicting proposed adjustments by agreeing with the position proposed by the Sellers or the Buyer, or "a compromise between such positions."[79] Stated differently, the Neutral Accountant's role is to review each proposed adjustment and identify the party whose adjustment is consistent with the calculations required by the MIPA, and if neither are consistent with the calculations required by the MIPA, it can determine a compromise somewhere between the two proposals.

Further evidencing the Neutral Accountant's limited authority, the allocation of its fee between the parties is "based on the inverse of the percentage that the Neutral Accountant's determination … bears to the disputed amount as originally submitted to the Neutral Accountant."[80] Thus, the MIPA only contemplates the

---

[78] *Hallisey v. Artic Intermediate, LLC*, 2020 WL 6438990, at *3 (Del. Ch. Oct. 29, 2020) (explaining courts will enforce contracts, "especially those negotiated by sophisticated parties or parties with counsel" and will read the contract as a whole).
[79] MIPA § 1.4(f); *Thompson Street Capital Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) (general contract terms must yield to its more specific terms).
[80] MIPA § 1.4(f).

Neutral Accountant performing certain calculations and not an investigation into whether the parties otherwise complied with the MIPA.

Similarly, in Section 1.6 the Neutral Accountant is only authorized to "determine the applicable Earnout Amount, if any."[81] The Neutral Accountant's fee for this determination shall be paid by the party whose calculation of the Earnout Amount is further from the Earnout Amount calculated by the Neutral Accountant.[82] Again, the agreement does not contemplate paying the Neutral Accountant to investigate whether a party complied with the MIPA beyond the necessary calculations.

Accordingly, the Neutral Accountant is not authorized to make legal determinations or factual findings. As such, the Neutral Accountant is not authorized to determine the Document Dispute, the Timing Dispute, or whether Buyer materially breached.

### C. *Did Buyer materially breach the MIPA?*

#### 1. *Does the MIPA provide for a condition precedent?*

Buyer first argues that its obligation to provide the post-closing documents is not a condition precedent. "A condition precedent is an act or event, other than a lapse of time, that must exist or occur *before* a duty to perform something promised

---

[81] *Id.* § 1.6(d).
[82] *Id.* § 1.6(d).

arises."[83] Conditions precedent are not favored because they tend to work a forfeiture.[84] Therefore, a condition precedent must be unambiguously stated and if the language of the agreement does not "clearly provide for a forfeiture, then a court will construe the agreement to avoid causing one."[85] The determination of whether a provision qualifies as a condition precedent is a question of law for the court to decide.[86]

If the court finds a condition precedent exists, "then the burden is on the party claiming breach to demonstrate that the condition on which the underlying obligation is contingent has been satisfied."[87] "An unexcused and unsatisfied condition keeps a dependent duty from accruing, thwarting an otherwise ripe breach claim."[88]

Buyer admits that it did not timely deliver the post-closing documents.[89] But it argues that its duty to provide these documents is not a condition precedent to the ADR process because (i) the MIPA does not provide a mechanism to enforce the

---

[83] *Nucor Coatings Corp. v. Precoat Metals Corp.,* 2023 WL 6368316, at *11 (Del. Super. Aug. 31, 2023) (quoting *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 (Del. Super. July 29, 2021) (cleaned up)).

[84] *Blue Cube Spinco LLC v. Dow Chemical Co.*, 2021 WL 4453460, at *10 (Del. Super. Sept. 29, 2021).

[85] *Id.* (quoting *Aveanna Healthcare*, 2021 WL 3235739, at *25).

[86] *Nucor Coatings Corp.,* 2023 WL 6368316, at *11 (citing *Aveanna Healthcare, LLC*, 2021 WL 3235739, at *25).

[87] *Aveanna Healthcare, LLC*, 2021 WL 3235739, at *25.

[88] *Aveanna Healthcare, LLC*, 2021 WL 3235739, at *25.

[89] Tr. at 18 ("we'll acknowledge the closing balance sheet wasn't timely, it was 12 days late…").

post-closing document delivery requirement, and (ii) to find that it is a condition precedent would work a forfeiture, which is not permissible unless clearly delineated in the MIPA, which it is not. It further argues that the timing is not a material term because the delivery of the documents was not stated in terms of "time is of the essence" and Sellers were not deprived of any benefits.[90]

Buyer seeks a ruling that its obligation to deliver the post-closing documents is not a condition precedent to preclude Sellers from arguing that Buyer waived its rights to the post-closing adjustment process and thereby waiving any right it had to the escrowed funds.[91] In Buyer's view, even if it never provided the post-closing documents, it cannot be deprived of the ADR process because it would work a forfeiture.[92] To support this proposition, Buyer relies on a case finding that notice provisions in indemnity coverage dispute was not a condition precedent.[93] Buyer distinguishes this decision from other decisions of this court which found a waiver

---

[90] Motion at 12.
[91] Tr. at 18.
[92] Tr. at 21–22.
[93] *See Blue Cube Spinco*, 2021 WL 4453460, at *10 (finding a notice provision was not a condition precedent where the agreement did not clearly express it as such).

based on failure to timely deliver post-closing documents,[94] by asserting that the parties in those cases never raised a condition precedent defense.[95]

Buyer is correct that delivery of the post-closing documents is not a condition precedent, but not for the reasons it argues. Buyer misconstrues that law. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."[96] Buyer's obligation to prepare and deliver the Closing Balance Sheet and Earnout Statement is not conditional. Section 1.4 provides that Buyer "shall" prepare and "shall submit" the Closing Balance Sheet and Section 1.6 provides Buyer "shall" deliver the Earnout Statement. The Buyer's obligation to perform these duties is not conditioned on any other event, let alone an uncertain event.[97] Accordingly, the condition precedent analysis simply does not apply to Buyer's obligation to deliver the post-closing documents.

---

[94] *See J&J Produce Holdings, Inc. v. Benson Hill Fresh, LLC*, 2020 WL 1188052 (Del. Ch. Mar. 11, 2020) (finding that by failing to deliver the Closing Statement by the date provide in the agreement, it waived its right to a final post-closing adjustment because any other relief would have allowed buyer to benefit from its own failure); *Schillinger Genetics, Inc. v. Beson Hill Seeds, Inc.*, 2021 WL 320723 (Del. Ch. Feb. 1, 2021) (buyer's failure to timely deliver Closing Statement waived its right to a post-closing adjustment); *Specialty DX Holdings, LLC v. Lab. Corp. of Am. Holdings,* 2021 WL 6327369 (Del. Super. Dec. 16, 201).

[95] Motion at 13; Tr. at 24-25.

[96] Restatement (Second) of Contracts § 224 (1981). "Delaware trial courts have followed the Restatement of Contracts when analyzing issues related to condition precedents." *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 n.241 (Del. Super. July 29, 2021); *Thompson Street Capital Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1168 n.71 (Del. 2025) (defining "condition").

[97] In contrast, the MIPA provides a remedy if Sellers fail to object after receipt of the post-closing documents—the Buyer's Closing Balance Sheet and Earnout Statement become final and binding.

Furthermore, Buyer cites no authority that the breaching party can use its own failure to satisfy an unconditional contractual obligation cannot be held accountable because it may lose certain rights. Ruling that Buyer's obligation is not a condition precedent does not have the insulating affect Buyer posited.

### 2. *Did Buyer materially breach the MIPA?*

Unless a contract is ambiguous, its interpretation is a question of law.[98] The court's focus is "solely on the language of the contract itself. If the language is unambiguous, its plain meaning alone dictates the outcome."[99] The court is to read the contract "as a whole ... [to] give each provision and term effect, so as not to render any part of the contract mere surplusage, and [ ] not read a contract to render a provision or term meaningless or illusory."[100] "[T]he intent of the parties as to [the contract's] scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document."[101] "The use of different language in sections of a contract indicates that the distinction was intentional."[102]

---

[98] *Soleimani v. Hakkak,* 2024 WL 1593923, at *4 (Del. Ch. Apr. 12, 2024); *Williams Cos. Inc. v. Energy Transfer LP,* 2020 WL 3581095, at *11 (Del. Ch. Jul. 2, 2020).

[99] *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) (internal quotations and citations omitted).

[100] *AM Gen. Holdings LLC v. Renco Group, Inc.*, 2020 WL 3484069, at *4 (Del. Ch. June 26, 2020) (quoting *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019)).

[101] *Williams Cos. Inc.,* 2020 WL 3581095, at *11 (Del. Ch. Jul. 2, 2020) (internal quotations and citations omitted).

[102] *Soleimani*, 2024 WL 1593923, at *6.

The MIPA does not require delivery of the Closing Balance Sheet within 120 days of Closing. Section 1.4(a) requires Buyer to "***prepare*** a balance sheet of the Acquired Companies as of the close of business on the Closing Date" no later than 120 days after the Closing.[103] Section 1.4(d) requires Buyer to "***submit*** the Closing Balance Sheet" to Sellers,[104] but does not set a deadline by which it must be submitted.

In contrast, Section 1.6(b) requires Buyer to "***deliver***" within 120 days of Closing the September 2023 QofE Report and the Earnout Statement.[105] Thus, it is clear that if the parties had agreed that the Closing Balance Sheet must be ***delivered*** by the 120-day deadline, they would have included such a provision.[106]

When an agreement is silent on when a party is to perform a required task, a reasonable time will be implied. "In every contract there is implied a promise or duty to perform with reasonable expediency the thing agreed to be done; a failure to do so is a breach of contract."[107] "What constitutes a 'reasonable time' is a question

---

[103] MIPA § 1.4(a) (emphasis added).
[104] *Id.* § 1.4(d) (emphasis added).
[105] *Id.* § 1.6(b) (emphasis added).
[106] *Soleimani*, 2024 WL 1593923, at *4.
[107] *Comet Sys.*, 980 A.2d at 1035 (citation omitted) (where merger agreement was silent on date when earnout payment was due, finding buyer was obligated to make payment "within a reasonable time"); *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2020 WL 7028597, at *8 (Del. Super. Nov. 30, 2020) ("In Delaware, parties have a 'reasonable' amount of time to perform the contract when the contract does not fix a time for its performance."); *see also HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *11 (Del. Ch. May 2, 2007) (when time is not of the essence, a party breaches the contract when it fails to perform in a reasonable time).

of fact, dependent on the circumstances of the case."[108] Thus, a dispute of material facts exists as to whether Buyer materially breached the MIPA by failing to timely provide the Closing Balance Sheet.[109] Further material disputes of fact exist over whether the documents provided comply with the requirements of the MIPA.

The Earnout Statement was required to be delivered within 120 days of Closing. Buyer admits it did not meet this deadline. The parties dispute why the deadline was missed. Buyer claims that Ms. Lytle's involvement caused, at least in part, the delay. Sellers claim that the Earnout Statement still has not been provided. Thus, a dispute of material fact exists as to whether Buyer materially breached the MIPA by failing to provide the Earnout Statement by the stated deadline and whether a 12-day delay (or longer) is a material breach.

## VII.    *Conclusion*

Buyer failed to show by clear and convincing evidence that it is entitled to specifically enforce the Neutral Accountant process and material disputes of fact exist, its Motion is **DENIED**.

/s/Kathleen M. Miller
Kathleen M. Miller, Judge[110]

---

[108] *Lewes Inv. Co., L.L.C. v. Estate of Graves*, 2013 WL 508486, at *17 (Del. Ch. Feb 12. 2013); *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2020 WL 7028597, at *8 (Del. Super. Nov. 30, 2020) ("reasonable time" is a question of fact).

[109] Material breach is a question of fact, not ripe for a determination as a matter of law. *AI Litig. Finance Assoc., Inc. v. Fortuna-Insights, Inc.*, 2025 WL 2556542, at *6 n.69 (Del. Super. Sept. 4, 2025).

[110] Sitting as a Vice Chancellor by designation. D.I. 4.